UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 12-81123-CIV-COHN/SELTZER

FRANCIS HOWARD, individually
and on behalf of all others
similarly situated,

    Plaintiff,

v.

CHANTICLEER HOLDINGS, INC.,
MICHAEL D. PRUITT, ERIC S.
LEDERER, MICHAEL CARROLL,
PAUL I. MOSKOWITZ, KEITH
JOHNSON, MARK HEZLETT,
MERRIMAN CAPITAL, INC.,
DAWSON JAMES SECURITIES, INC.,
and CREASON & ASSOCIATES, P.L.L.C.,

    Defendants.
_____/

## ORDER ON DEFENDANTS' MOTIONS TO DISMISS
## AND FOR MORE DEFINITE STATEMENT

**THIS CAUSE** is before the Court upon three motions filed by Defendants: Motion to Dismiss the Amended Class Action Complaint on Behalf of Defendants Chanticleer Holdings, Inc., Michael D. Pruitt, Eric S. Lederer, Michael Carroll, Paul I. Moskowitz and Keith Johnson [DE 32]; Defendant Creason & Associates, P.L.L.C.'s Motion to Dismiss Plaintiff's Amended Class Action Complaint [DE 33]; and Defendant Creason & Associates, P.L.L.C.'s Motion for More Definite Statement [DE 34] (together, "Motions"). The Court has carefully reviewed the Motions and all related filings and is otherwise fully advised in the premises.

I.  **Background**

   A.  Facts[1]

This case is a proposed class action involving a public offering of securities (the "Offering") by Defendant Chanticleer Holdings, Inc. ("Chanticleer"). Chanticleer owns and operates Hooters restaurants in international markets. Immediately prior to the Offering, Chanticleer operated five Hooters franchises: four in South Africa (the "South Africa Operations") and one in Australia.

On June 19, 2012, Chanticleer filed an amended Registration Statement for the Offering with the Securities and Exchange Commission ("SEC"). The Registration Statement contained a preliminary Prospectus, and Chanticleer filed a final Prospectus with the SEC on June 21, 2012.[2] The Registration Statement was signed by Defendants Michael D. Pruitt, Eric S. Lederer, Michael Carroll, Paul I. Moskowitz, and Keith Johnson—all executive officers or directors of Chanticleer. The SEC declared the Registration Statement effective on June 20, 2012.

For the fiscal year ending December 31, 2011, ("FY 2011") Chanticleer's South Africa Operations constituted 63 percent of the $1.43 million in revenue that the company reported. In the first quarter ending March 31, 2012, ("Q1 2012") the South Africa Operations amounted to 100 percent of Chanticleer's restaurant sales. As

---

[1] The facts recited here are taken from Plaintiff's Amended Class Action Complaint [DE 28] and the public filings attached to the parties' motion papers. See Oxford Asset Mgmt., Ltd. v. Jaharis, 297 F.3d 1182, 1188 (11th Cir. 2002) ("In a motion to dismiss a securities action, a court may consider the contents of public disclosure documents which are required to be filed with the SEC and are actually so filed." (citing Bryant v. Avado Brands, Inc., 187 F.3d 1271, 1277-78 (11th Cir.1999))).

[2] The Court will refer to the preliminary and final Prospectuses together as the "Prospectus."

pertinent here, the Registration Statement and Prospectus (together, the "Filings") included income-statement and balance-sheet line items for FY 2011 and Q1 2012. The Filings represented that the financial statements for FY 2011 were "audited." Also, the Filings included an audit-opinion letter from Chanticleer's auditor, Defendant Creason & Associates, P.L.L.C. ("Creason"). Creason's letter stated in relevant part:

> We did not audit the financial statements of [Chanticleer's South Africa Operations], which statements reflect total assets and revenues constituting 72 percent and 66 percent, respectively, of the related consolidated totals. Those statements were audited by other auditors whose reports have been furnished to us, and our opinion, insofar as it relates to the amounts included for the South Africa Operations, is based solely on the reports of the other auditors.
>
> ***
>
> In our opinion, based on our audit and the reports of the other auditors, the consolidated financial statements referred to above present fairly, in all material respects, the consolidated financial position of Chanticleer Holdings, Inc. and Subsidiaries as of December 31, 2011 and 2010, and the consolidated results of their operations and their cash flows for the years ended December 31, 2011 and 2010, in conformity with accounting principles generally accepted in the United States of America.

The Offering commenced on or about June 21, 2012, and included 2.44 million Chanticleer Units that were sold at $4.50 apiece. Each Unit consisted of one share of Chanticleer common stock and one warrant to purchase a share of common stock for $5.00. The Offering generated proceeds of $10.12 million, and the securities issued were listed on NASDAQ.

On September 10, 2012, Chanticleer filed a Current Report with the SEC. The Current Report disclosed that Chanticleer's financial statements for FY 2011 and Q1 2012 could no longer be relied upon because the statements for the South Africa Operations had not, in fact, been audited:

> **Item 4.02(a)   Non-Reliance on Previously Issued Financial Statements of a Related Audit Report or Completed Interim Review**
>
> On September 7, 2012, the audit committee of Chanticleer Holdings, Inc. (the "Company"), upon recommendation of the Company's management determined that the Company's consolidated Financial Statements for its fiscal year ending December 31, 2011 and the interim unaudited financial statements for its fiscal quarters ending March 31, 2012 and June 30, 2012 could no longer be relied on.  The Company determined that the audited financial statements of [the South Africa Operations] which are the South African management company and the four entities setup for the stores we operate in South Africa, were not audited as the Company was led to believe.  [Defendant] Mark Hezlett, the CFO and Director of our South Africa Operations, has resigned effective immediately.

Due to this disclosure, NASDAQ halted trading in Chanticleer's stock on September 11, 2012.  Before trading was halted, the last trade for Chanticleer's common stock was $3.64 per share.

On December 4 and 17, 2012, Chanticleer filed restated financial results for FY 2011 and Q1 2012, respectively (the "Restatement").  The Restatement included audited and reviewed financial statements for the South Africa Operations.  The revised statements showed, among other discrepancies, that the earlier Filings had understated Chanticleer's operating losses for FY 2011 by 33.8 percent and its losses for Q1 2012 by 44.6 percent.

On January 16, 2013, trading in Chanticleer's stock resumed on NASDAQ.  Over the next four trading days, the price of Chanticleer's common stock fell from its halted price of $3.64 per share to $2.44 per share on January 22, 2013.  Thereafter, Chanticleer's stock price continued to drop.  As of February 15, 2013, the stock was trading at $1.66 per share.

### B. Procedural History

In connection with the Offering, Plaintiff Francis Howard purchased 8,500 Chanticleer Units at a total price of $38,080. On October 12, 2012, Howard filed this proposed class action against Chanticleer, several of its senior officers and directors, two underwriters of the Offering, and Creason (collectively, "Defendants"). See DE 1. The Court later appointed Howard to serve as lead plaintiff and approved his selection of class counsel. See DE 27; 15 U.S.C. § 77z-1(a)(3)(B)(i), (v). Thereafter, Howard filed an Amended Class Action Complaint for Violations of the Federal Securities Laws [DE 28] ("Amended Complaint"). Based on the Filings' misstatements about the auditing of Chanticleer's financial statements, Howard claims that Defendants violated Sections 11 and 15(a) of the Securities Act of 1933 (the "Act"). See 15 U.S.C. §§ 77k, 77o(a).[3] Howard contends that those misstatements caused him to purchase Chanticleer Units at "artificially inflated prices." DE 28 at 7, ¶ 34; see id. ¶ 29. In addition to his own claims for damages, Howard seeks to represent the following class:

> [A]ll persons other than defendants who purchased or otherwise acquired Chanticleer units, common stock or warrants pursuant or traceable to the Company's public offering, which commenced on or about June 21, 2012 . . . , including those who purchased or otherwise acquired Chanticleer common stock, warrants, or Units between June 21, 2012 and September 10, 2012, inclusive[.]

Id. at 2, ¶ 1.

In response to the Amended Complaint, Defendants Chanticleer Holdings, Inc., Michael D. Pruitt, Eric S. Lederer, Michael Carroll, Paul I. Moskowitz, and Keith

---

[3] The Amended Complaint also pleads claims against the two underwriters, Dawson James Securities, Inc., and Merriman Capital, Inc. After filing the Amended Complaint, however, Howard voluntarily dismissed those Defendants from this action. See DE 47–48.

5

Johnson (together, the "Chanticleer Defendants") filed their Motion to Dismiss [DE 32].[4] Defendant Creason also filed a Motion to Dismiss [DE 33], as well as a Motion for More Definite Statement [DE 34]. All of these Motions are fully briefed and ripe for decision.

## II.     Discussion

### A.     Legal Standards

#### 1.     Liability Under the Act

Section 11 of the Act "allows purchasers of a registered security to sue certain enumerated parties in a registered offering when false or misleading information is included in a registration statement." Herman & MacLean v. Huddleston, 459 U.S. 375, 381 (1983); see 15 U.S.C. § 77k(a). In particular, the statute imposes liability when an effective registration statement "contained an untrue statement of material fact or omitted to state a material fact required to be stated therein or necessary to make the statements therein not misleading." 15 U.S.C. § 77k(a). As relevant here, a person who acquires securities issued under a false or misleading registration statement may bring an action against

(1)     every person who signed the registration statement;

(2)     every person who was a director of (or person performing similar functions) or partner in the issuer at the time of the filing of the part of the registration statement with respect to which his liability is asserted;

(3)     every person who, with his consent, is named in the registration statement as being or about to become a director, person performing similar functions, or partner; [and]

(4)     every accountant . . . who has with his consent been named as having prepared or certified any part of the registration statement,

---

[4] Defendant Mark Hezlett has not responded to the Amended Complaint or otherwise appeared in this case.

>or as having prepared or certified any report or valuation which is used in connection with the registration statement, with respect to the statement in such registration statement, report, or valuation, which purports to have been prepared or certified by him[.]

Id.; see Ehlert v. Singer, 245 F.3d 1313, 1315 (11th Cir. 2001) ("A § 11 claim can be brought against the issuer of the securities, the issuer's directors or partners, . . . and accountants who are named as having prepared or certified the registration statement.").

Section 11 "was designed to assure compliance with the disclosure provisions of the Act by imposing a stringent standard of liability on the parties who play a direct role in a registered offering." Herman & MacLean, 459 U.S. at 381-82 (footnotes omitted). To prove a § 11 claim, "a plaintiff need only show a material misstatement and/or omission in the registration statement" for the securities he acquired. APA Excelsior III L.P. v. Premiere Techs., Inc., 476 F.3d 1261, 1271 (11th Cir. 2007); see Herman & MacLean, 459 U.S. at 382. If a plaintiff makes this showing, "[l]iability against the issuer of a security is virtually absolute, even for innocent misstatements." Herman & MacLean, 459 U.S. at 382 (footnote omitted); see Wagner v. First Horizon Pharm. Corp., 464 F.3d 1273, 1277 (11th Cir. 2006) (explaining that "[t]here is no state of mind element to a § 11 claim").

Defendants other than the issuer may avoid § 11 liability by proving a "due diligence" defense, which is essentially a "negligence standard." Herman & MacLean, 459 U.S. at 382; Ernst & Ernst v. Hochfelder, 425 U.S. 185, 208 & n.26 (1976). Generally, such a defendant must show that when the relevant part of the registration statement became effective, "he had, after reasonable investigation, reasonable ground to believe and did believe . . . that the statements therein were true and that there was

7

no omission to state a material fact required to be stated therein or necessary to make the statements therein not misleading." 15 U.S.C. § 77k(b)(3)(A), (B)(i); see id. § 77k(b)(3)(C). For this defense, "the standard of reasonableness [is] that required of a prudent man in the management of his own property" Id. § 77k(c).

In addition to primary liability under § 11, § 15(a) of the Act "imposes joint and several liability upon controlling persons for acts committed by those under their control that violate" § 11. Ehlert, 245 F.3d at 1320; see 15 U.S.C. § 77o(a). To establish a prima facie case of a § 15(a) violation, the plaintiff must prove that the defendants "(1) each had power or influence over the controlled person and (2) each induced or participated in the alleged violation." Ehlert, 245 F.3d at 1320 (internal quotation marks omitted). A defense to § 15(a) liability exists when "the controlling person had no knowledge of or reasonable ground to believe in the existence of the facts by reason of which the liability of the controlled person is alleged to exist." 15 U.S.C. § 77o(a).

### 2. Dismissal Standards

A plaintiff's complaint may be dismissed for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Federal Rule of Civil Procedure 8(a)(2) requires that the complaint include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To withstand a motion to dismiss, the complaint must contain factual allegations that are "enough to raise a right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). Thus, a complaint must plead "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's

obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555 (alteration, citations & internal quotation marks omitted).

Nonetheless, a complaint must be liberally construed, assuming the alleged facts as true and drawing all reasonable inferences from those facts in the plaintiff's favor. See id. at 555-56. A complaint should not be dismissed simply because the court is doubtful that the plaintiff will be able to prove the necessary facts. See id. Accordingly, a well-pleaded complaint will survive a motion to dismiss even if it appears "that a recovery is very remote and unlikely." Id. at 556 (internal quotation marks omitted).

### B. Chanticleer Defendants' Motion to Dismiss

The Chanticleer Defendants argue that, in addition to meeting the pleading standards discussed above, Howard must satisfy the requirements of Federal Rule of Civil Procedure 9(b) because his claims are based on allegations of fraud. Rule 9(b) requires a party alleging fraud to "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). This particularity requirement "serves an important purpose in fraud actions by alerting defendants to the precise misconduct with which they are charged and protecting defendants against spurious charges of immoral and fraudulent behavior." Ziemba v. Cascade Int'l, Inc., 256 F.3d 1194, 1202 (11th Cir. 2001) (internal quotation marks omitted). Here, however, the Court finds that Howard's claims are not based on fraud and therefore are not subject to Rule 9(b)'s heightened pleading standards.

In Wagner v. First Horizon Pharmaceutical Corp., 464 F.3d 1273, 1277-78 (11th Cir. 2006), the Eleventh Circuit addressed the issue of when Rule 9(b) applies to "nonfraud" claims under the Act—such as § 11 claims—which do not require proof of

9

fraud or scienter. The Eleventh Circuit held that "Rule 9(b) applies when the misrepresentation justifying relief under the Securities Act is also alleged to support a claim for fraud under the [Securities] Exchange Act [of 1934] and Rule 10(b)-5." Wagner, 464 F.3d at 1277. In other words, a § 11 claim "must be pled with particularity when the facts underlying the misrepresentation at stake in the claim are said to be part of a fraud claim, as alleged elsewhere in the complaint." Id. at 1278. But if a plaintiff brings a § 11 claim "without alleging the misrepresentation at issue in the claim was fraudulent, they would avoid the heightened pleading requirements of Rule 9(b)." Id.

In this case, Howard has pleaded only two claims: a § 11 claim based on misstatements in Chanticleer's Filings and a related controlling-persons claim under § 15(a). Nowhere in the Amended Complaint does he assert a separate claim for securities fraud. See Wagner, 464 F.3d at 1277. More, the Amended Complaint expressly states that neither of Howard's claims is based on fraud. See DE 28 at 11, ¶ 53; id. at 14, ¶ 71; see In re Unicapital Corp. Secs. Litig., 149 F. Supp. 2d 1353, 1363 (S.D. Fla. 2001) (emphasizing that § 11 claims "do not require any intent to defraud on the part of the defendant, or even knowledge of the misrepresentation or omission").

The Chanticleer Defendants correctly observe that Howard may not rely on "a general disclaimer in an attempt to immunize the nonfraud claims from the Rule 9 requirements." Wagner, 464 F.3d at 1277. Yet the Amended Complaint goes much further than that: It not only lacks a separate fraud claim but also contains no allegations of fraud in the claims that are pleaded. Defendants point to Howard's averment that "Defendants knew, or in the exercise of reasonable care, should have known of the material misstatements and omissions" in the Filings. DE 28 at 11-12, ¶ 57. Defendants also note (1) Creason's statement in the Filings that audit reports for

10

the South Africa financial statements "ha[d] been furnished to" Creason, (2) Chanticleer's later statement in the Current Report that those financial statements "were not audited as the Company was led to believe," and (3) the further statement in the Current Report that Defendant Mark Hezlett had "resigned effective immediately." Id. at 4, ¶ 14.  But whether considered separately or together, these allegations—which suggest fraud indirectly at best—fall far short of the independent fraud claim necessary to invoke Rule 9(b).  See Wagner, 464 F.3d at 1277-78.

Having determined that Howard's claims do not rely on allegations of fraud, the Court need not consider the Chanticleer Defendants' arguments that the claims are not pleaded with the particularity required by Rule 9(b).  And the Chanticleer Defendants do not contest that Howard has alleged sufficient facts to state plausible claims for relief under § 11 and §15(a).  See Iqbal, 556 U.S. at 678; Twombly, 550 U.S. at 555, 570. The Chanticleer Defendants argue, however, that the Amended Complaint "establishes a clear defense"—namely, that they cannot be held liable for Creason's representations about the audit of the South Africa financial statements because they had no reason to believe that those representations were false or misleading.  DE 32 at 11; see 15 U.S.C. § 77k(b)(3)(C) (providing that a person may not be held liable for "any part of the registration statement purporting to be made on the authority of an expert (other than himself) [if] he had no reasonable ground to believe and did not believe . . . that the statements therein were untrue or" misleading).  The Court disagrees.

A complaint is "subject to dismissal under Rule 12(b)(6) when its allegations—on their face—show that an affirmative defense bars recovery on the claim."  Marsh v. Butler Cnty., 268 F.3d 1014, 1022 (11th Cir. 2001) (en banc).  The Chanticleer Defendants contend that this standard is met here:  "The allegations from the face of

11

the Amended Complaint make clear that the Individual Defendants had no reason to believe that the expertised audit reports were false or misleading." DE 32 at 14. Though some of the Chanticleer Defendants may ultimately prove this defense, the Amended Complaint does not establish it as a matter of law.  Viewing the alleged facts in the light most favorable to Howard, senior officers and directors of Chanticleer—some of whom were on the firm's Audit Committee—represented that the FY 2011 financial statements for the bulk of the company's operations had been audited when, in reality, they had not.  Too, Chanticleer's restated financial results showed that the originally reported figures significantly understated the amount of operating losses.  And Howard contends that "[n]one of the defendants made a reasonable investigation or possessed a reasonable belief that the statements contained in the [Filings] were true" or not misleading.  DE 28 at 12, ¶ 59; see id. at 15, ¶ 74 ("Had [Defendants] exercised reasonable care, they could have known of the material misstatements and omissions alleged herein.").  Nothing in the Amended Complaint contradicts these allegations, which adequately plead the Chanticleer Defendants' liability under § 11 and § 15(a).  Therefore, the Court will deny the Chanticleer Defendants' Motion to Dismiss.

      **C.**     **Creason's Motion to Dismiss**

Creason asserts that it cannot be held liable for the misstatements in the Filings because it did not prepare or certify the inaccurate financial statements for Chanticleer's South Africa Operations.  See 15 U.S.C. § 77k(a)(4).  The Court finds this argument meritless.  Section 11 permits a claim against

> every accountant . . . who has with his consent been named as having prepared or certified any part of the [false or misleading] registration statement, or as having prepared or certified any report or valuation which is used in connection

12

>with the registration statement, with respect to the statement in such registration statement, report, or valuation, which purports to have been prepared or certified by him[.]

Id. Here, Creason's audit-opinion letter does state that Creason "did not audit the financial statements of" the South Africa Operations. But Creason's letter further represents that "[t]hose statements were audited by other auditors whose reports have been furnished to us, and our opinion, insofar as it relates to the amounts included for the South Africa Operations, is based solely on the reports of the other auditors." As Chanticleer later revealed in the Current Report, the South Africa financial statements had not been audited by anyone. So Creason could not have reviewed reports from other auditors, much less expressed an opinion about the South Africa financial statements based on such reports. Said differently, Creason certified the South Africa financial statements based on its claimed review of audit reports that never existed. These facts are more than sufficient to state a § 11 claim against Creason.

In addition, Creason maintains that while it audited Chanticleer's financial statements for FY 2011, it did not audit the financial statements for Q1 2012. See Herman & MacLean, 459 U.S. at 381 n.11 ("Accountants are liable under Section 11 only for those matters which purport to have been prepared or certified by them." (citing 15 U.S.C. § 77k(a)(4)). The record confirms, and Howard does not dispute, that the Q1 2012 financial statements contained in the Filings were unaudited. Accordingly, the Court will dismiss Howard's claim against Creason with respect to the Q1 2012 financial statements only.

>**D.  Creason's Motion for More Definite Statement**

Creason also seeks to require Howard to provide a more definite statement of his claim. Federal Rule of Civil Procedure 12(e) allows a party to "move for a more

13

definite statement of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response." Fed. R. Civ. P. 12(e).  Creason argues that it cannot reasonably respond to the Amended Complaint because that pleading does not specify which of Creason's statements about the South Africa Operations were allegedly false.  The Court rejects this argument.  As discussed above, Howard has plausibly alleged that Creason made at least the following false statements:  that the FY 2011 financial statements for the South Africa Operations "were audited by other auditors," that those auditors' reports "ha[d] been furnished to" Creason, and that Creason's opinion of the South Africa financial statements was "based solely on the reports of the other auditors."

More, Creason claims that it cannot respond to Howard's allegation that "Chanticleer's restatement was caused primarily by the oversight or misuse of facts." DE 28 at 6, ¶ 28.  Again, the Court finds this argument unpersuasive.  The challenged allegation refers to the preceding paragraphs in the Amended Complaint, which assert that the Filings' incorrect financial statements did not comply with generally accepted accounting principles.  Especially in light of the allegations regarding Creason's false statements, Creason can reasonably interpret and respond to this allegation as well.

### III.     Conclusion

For the foregoing reasons, it is hereby **ORDERED AND ADJUDGED** as follows:

1. The Motion to Dismiss the Amended Class Action Complaint on Behalf of Defendants Chanticleer Holdings, Inc., Michael D. Pruitt, Eric S. Lederer, Michael Carroll, Paul I. Moskowitz and Keith Johnson [DE 32] is **DENIED**;

2. Defendant Creason & Associates, P.L.L.C.'s Motion to Dismiss Plaintiff's Amended Class Action Complaint [DE 33] is **GRANTED IN PART and**

**DENIED IN PART.** To the extent that Plaintiff's claim against Defendant Creason is based on Chanticleer's financial statements for the quarter ending March 31, 2012, that claim is **DISMISSED.** But Plaintiff may proceed with his claim against Creason with respect to Chanticleer's financial statements for the fiscal year ending December 31, 2011;

3. Defendant Creason & Associates, P.L.L.C.'s Motion for More Definite Statement [DE 34] is **DENIED**;

4. By **October 8, 2013,** Defendants shall file Answers to Plaintiff's Amended Class Action Complaint [DE 28]; and

5. Because this action is still in the pleadings stage, trial is reset for the **two-week period commencing May 12, 2014, at 9:00 a.m.,** or as soon thereafter as the case may be called. Calendar call is reset for **May 8, 2014, at 9:00 a.m.** All other provisions of the Court's original trial Order [DE 4] shall remain in effect.

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Broward County, Florida, this 17th day of September, 2013.

_____
JAMES I. COHN
United States District Judge

Copies furnished to:

Counsel of record via CM/ECF