**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
Case No. 12-81123-CIV-COHN/SELTZER

FRANCIS HOWARD, Individually and on Behalf
of All Others Similarly Situated,

      Plaintiff,

      VS.

CHANTICLEER HOLDINGS, INC., MICHAEL D.
PRUITT, ERIC S. LEDERER, MICHAEL
CARROLL, PAUL I. MOSKOWITZ, KEITH
JOHNSON, MARK HEZLETT, MERRIMAN
CAPITAL, INC., DAWSON JAMES SECURITIES,
INC., CREASON & ASSOCIATES P.L.L.C.

      Defendants.

**MOTION FOR PRELIMINARY**
**APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT**
**AND MEMORANDUM OF LAW IN SUPPORT THEREOF**

# TABLE OF CONTENTS

MOTION ................................................................................................................................. 1

MEMORANDUM OF LAW ................................................................................................... 2

I. INTRODUCTION .......................................................................................................... 2

II. RELEVANT PROCEDURAL HISTORY ..................................................................... 3

III. THE COURT SHOULD PRELIMINARILY CERTIFY THE SETTLEMENT CLASS .. 5

    A. The Consolidated Action Meets the Requirements of Rule 23(a) .......................... 6

        1. Numerosity ................................................................................................. 6

        2. Commonality .............................................................................................. 6

        3. Typicality ................................................................................................... 7

        4. Adequacy ................................................................................................... 8

            i. Proposed Class Representatives are Adequate ............................. 8

            ii. Proposed Class Counsel is Adequate ........................................... 8

    B. The Proposed Settlement Class Satisfies Rule 23(b)(3) ........................................ 9

        1. Common Questions Predominate ............................................................... 9

        2. A Class Action Is the Superior to Other Methods of Adjudication .......... 10

IV. THE PROPOSED SETTLEMENT MEETS THE CRITERIA NECESSARY FOR THIS COURT TO GRANT PRELIMINARY APPROVAL .................................................... 11

    A. The Proposed Settlement Has No Obvious Deficiencies and is the Result of Good Faith, Arm's-Length Negotiations ....................................................................... 13

    B. The Settlement Falls within the Range of Possible Approval .............................. 14

    C. Substantial Risks of Continued Litigation .......................................................... 16

V. THE COURT SHOULD APPROVE THE PROPOSED FORMS OF NOTICE AND PLAN FOR PROVIDING NOTICE .............................................................................. 17

VI. CONCLUSION ............................................................................................................. 18

# TABLE OF AUTHORITIES

## Cases

*Amchem Prods. v. Windsor*,
521 U.S. 591 (1997)..................................................................................... 9

*Appleyard v. Wallace*,
754 F.2d 955 (11th Cir.1985) ...................................................................... 7

*Badger v. S. Farm Bureau Life Ins. Co.*,
612 F.3d 1334 (11th Cir. 2010) ................................................................ 13

*Behrens v. Wometco Enterprises*,
899 F.2d 21 (11th Cir. 1990) ...................................................................... 13

*Behrens v. Wometco Enterprises, Inc.*,
118 F.R.D. 534 (S.D. Fla. 1988).................................................................. 13

*Bennett v. Behring Corp.*,
737 F.2d 982 (11th Cir. 1984) ............................................................... 11, 12

*Borcea v. Carnival Corp.*,
238 F.R.D. 664 (S.D. Fla. 2006)................................................................... 5

*Canupp v. Liberty Behavioral Health Corp.*,
417 F. App'x. 843 (11th Cir. 2011) ............................................................. 13

*Chatelain v. Prudential- Bache Sec., Inc.*,
805 F. Supp. 209 (S.D.N.Y. 1992)............................................................... 16

*Cheney v. Cyberguard Corp.*,
213 F.R.D. 484 (S.D. Fla. 2003) ................................................................... 7

*City of Detroit v. Grinnell Corp.*,
495 F.2d 448 (2d Cir. 1974)........................................................................ 15

*Cooper v. Pac. Life Ins. Co.*,
229 F.R.D. 245 (S.D. Ga. 2005) ................................................................... 7

*Cotton v. Hinton*,
559 F.2d 1326 (5th Cir. 1977) .................................................................... 15

*Cox v. Am. Cast Iron Pipe Co.*,
784 F.2d 1546 (11th Cir. 1986) ................................................................ 6, 9

*CV Reit, Inc. v. Levy*,
144 F.R.D. 690 (S.D. Fla. 1992).................................................................. 10

*Faught v. Am. Home Shield Corp.*,
   661 F.3d 1040 (11th Cir. 2011) ...................................................... 12

*Figueroa v. Sharper Image Corp.*,
   517 F. Supp. 2d 1292 (S.D. Fla. 2007) ........................................... 12

*Francisco v. Numismatic Guar. Corp. of Am.*,
   2008 WL 649124 (S.D. Fla. Jan. 31, 2008) ..................................... 13

*Fresco v. Auto Data Direct, Inc.*,
   2007 WL 2330895 (S.D. Fla. May 14, 2007) ................................... 11

*Griffin v. Carlin*,
   755 F.2d 1516 (11th Cir.1985) ........................................................ 8

*Gutter v. E.I. Dupont De Nemours & Co.*,
   2003 U.S. Dist. LEXIS 27238 (S.D. Fla. May 30, 2003) ................. 16

*In re Charter Commc'ns, Inc. Sec. Litig.*, ,
   2005 WL 4045741 (E.D. Mo. June 30, 2005) .................................. 11

*In re Checking Account Overdraft Litig.*,
   2012 WL 4173458 (S.D. Fla. Sept. 19, 2012) .................................. 11

*In re Checking Account Overdraft Litig.*,
   275 F.R.D. 654 (S.D. Fla. 2011) ................................................. 8, 13

*In re Corrugated Container Antitrust Litig.*,
   643 F.2d 195 (5th Cir. 1981) .......................................................... 14

*In re Domestic Air Transp. Antitrust Litig.*,
   148 F.R.D. 297 (N.D. Ga. 1993) ...................................................... 6

*In re Elan Sec. Litig.*,
   385 F. Supp. 2d 363 (S.D.N.Y. 2005) ............................................. 14

*In re Healthsouth Corp. Sec. Litig.*,
   213 F.R.D. 447 (N.D. Ala. 2003) ..................................................... 7

*In re Healthsouth Corp. Sec. Litig.*,
   257 F.R.D. 260 (N.D. Ala. 2009) ..................................................... 6

*In re Silicone Gel Breast Implant Prods. Liab. Litig.*,
   1994 WL 114580 (N.D. Ala. Apr. 1, 1994) ..................................... 12

*In re Skinner Grp., Inc.*,
   206 B.R. 252 (Bankr. N.D. Ga. 1997) ............................................. 11

*In re Smith*,
   926 F.2d 1027 (11th Cir. 1991) ..................................................................... 12

*In re Terazosin Hydrochloride*,
   220 F.R.D. 672 (S.D. Fla. 2004) ...................................................................... 9

*In re Theragenics Corp. Sec. Litig.*,
   205 F.R.D. 687 (N.D. Ga. 2002)...................................................................... 9

*In re U.S. Oil & Gas Litig.*,
   967 F.2d 489 (11th Cir. 1992) ....................................................................... 11

*In re Skunner Grp. Inc.*,
   206 B.R. 252 (Bankr. N.D. Ga. 1997) .......................................................... 11

*Kirkpatrick v. J.C. Bradford & Co.*,
   827 F.2d 718 (11th Cir. 1987) ................................................................... 5, 10

*LaGrasta v. First Union Sec., Inc.*,
   2005 WL 1875469 (M.D. Fla. Aug. 8, 2005) .................................................. 6

*Mashburn v. Nat'l Healthcare, Inc.*,
   684 F. Supp. 660 (M.D. Ala. 1988) .............................................................. 11

*Powers v. Stuart-James Co., Inc.*,
   707 F. Supp. 499 (M.D. Fla. 1989) ................................................................ 6

*Robbins v. Kroger Props. Inc.*,
   116 F.3d 1441 (11th Cir.) ............................................................................. 16

*Strube v. Am. Equity Inv. Life Ins. Co.*,
   226 F.R.D. 688 (M.D. Fla. 2005)................................................................... 14

*Valley Drug Co. v. Geneva Pharm., Inc.*,
   350 F.3d 1181 (11th Cir. 2003) ...................................................................... 5

*Wells v. HBO & Co.*,
   1991 WL 131177 (N.D. Ga. Apr. 24, 1991) ............................................. 7, 10

**Statutes**

15 U.S.C. § 78u-4(a)(7) .......................................................................................... 18

**Rules**

Fed. R. Civ. P. 23............................................................................................ passim

**Other Authorities**

4 H. Newberg & A. Conte, Newberg on Class Actions, § 3.10 (4th ed. 2002) ........................ 7, 14

Dr. Renzo Comolli, Sukaina Klein, Ron Miller, and Svetlana Starykh, *Recent Trends in Securities Class Action Litigation: 2012 Full-Year Review*……………………………………………15

**<u>MOTION</u>**

Francis Howard and Ja'Marr Comer (collectively "Lead Plaintiffs" or "Plaintiffs"), upon the accompanying Memorandum of Law in Support of Plaintiffs' Motion for Preliminary Approval and the accompanying Declaration of Laurence Rosen ("Rosen Decl.") and the exhibit attached thereto, hereby move the Court for an order pursuant to Rule 23 of the Federal Rules of Civil Procedure: (1) preliminarily certifying the Class for the purposes of settlement; (2) preliminarily approving the terms of the settlement set forth in the Stipulation and Agreement of Settlement dated March 17, 2014 (the "Stipulation") entered into by the parties; (3) establishing a date for a hearing to determine the fairness, reasonableness, and adequacy of the settlement set forth in the Stipulation; (4) providing for notice to Class Members of the hearing on the proposed settlement and dismissal of the Action; and (5) such other and further relief as the Court deems just and proper.

The following is a proposed timetable to help the Court establish the necessary deadlines in the proposed Preliminary Order. The proposed dates will allow sufficient time for notice to issue, for class members to respond to the notice and consider their options, and the proposed schedule is consistent with schedules entered in other securities class actions.

| Event | Deadline for Compliance |
|---|---|
| Date for the Settlement Hearing. | Plaintiffs suggest within 110 days from entry of the Preliminary Approval Order. (Preliminary Approval Order ¶ 5) |
| Mailing of Notice and Proof of Claim and Release. | No later than sixteen (16) business days following entry of the Preliminary Approval Order (Preliminary Approval Order ¶ 11) |
| Publication of Summary Notice. | No later than sixteen (16) business days following entry of the Preliminary Approval Order (Preliminary Approval Order ¶ 14) |

| Event | Deadline for Compliance |
|---|---|
| Deadline for filing Claim Forms. | No later than twenty one (21) days prior to the Settlement Hearing (Preliminary Approval Order ¶ 17) |
| Filing deadline for requests for exclusion. | No later than twenty one (21) days prior to the Settlement Hearing (Preliminary Approval Order ¶ 18) |
| Date for Lead Plaintiffs to file papers in support of the Settlement, the Plan of Allocation and for application for attorneys' fees and reimbursement of expenses. | No later than thirty five (35) days prior to the Settlement Hearing. (Preliminary Approval Order ¶ 22) |
| Filing deadline for objections. | No later than twenty one (21) days prior to the Settlement Hearing (Preliminary Approval Order ¶ 20) |
| Date for Plaintiffs to file reply papers in support of the Settlement, the Plan of Allocation and for application for attorneys' fees and reimbursement of expenses. | No later than seven (7) days prior to the Settlement Hearing. (Preliminary Approval Order ¶ 22) |

**MEMORANDUM OF LAW**

## I.       INTRODUCTION

Plaintiff respectfully submit this memorandum in support of the Stipulation and Agreement of Settlement dated March 17, 2014 (the "Stipulation" or "Settlement"), filed with the Court herewith.  Pursuant to the Stipulation, Plaintiffs request that the Court enter an order: (1) preliminarily certifying the Class for the purposes of settlement; (2) preliminarily approving the terms of the Settlement[1] as set forth in the Stipulation; (3) approving the form and method for providing notice of the Settlement to the Class; and (4) scheduling a Fairness Hearing at which the request for final approval of the proposed Settlement, the Plan of Allocation of settlement proceeds, the Attorneys' Fee and Expenses Application, and entry of the final Judgment will be considered.

---

[1] Unless otherwise indicated, all capitalized terms herein shall have the same meanings as set forth in the Stipulation.

In preliminarily approving the Settlement, this Court must satisfy itself that this action may proceed as a class action. Upon satisfying itself that the action may achieve class action status, the Court must then approve the form, content, and means of notifying the preliminarily certified Class of the existence of the action and of the terms of the Settlement. The Court must then set deadlines for counsel to disseminate and/or publish the notice, for Class members to opt out of the Class, for Class members to object to the terms of the settlement, and/or for Class members to file claims. Lastly, the Court must set a date for a final hearing to determine whether it will approve the Settlement as fair, reasonable, and adequate. Thus, at this stage, the Court need not engage in a detailed analysis of the fairness of the Settlement, as that is reserved for the Fairness Hearing, at which time interested Class Members and counsel for the parties shall be heard on the matter.

## II.       RELEVANT PROCEDURAL HISTORY

On October 12, 2012, a class action complaint alleging violations of federal securities laws was filed in this Court. On January 4, 2013, the Court appointed Francis Howard as Lead Plaintiff and The Rosen Law Firm, P.A. as Lead Counsel.

On February 19, 2013, Lead Plaintiff filed the an amended class action complaint on behalf of all persons who purchased or otherwise acquired Chanticleer Holdings, Inc. ("Chanticleer" or the "Company") securities pursuant or traceable to the Company's public offering, which commenced on or about June 21, 2012 (the "Offering"), including those who purchased or otherwise acquired Chanticleer securities between June 21, 2012 and September 10, 2012, inclusive, and were damaged thereby. The Complaint asserts: 1) a claim for violation of Section 11 of the Securities Act of 1933 (the "Securities Act") against Michael D. Pruitt, Eric S. Lederer, Michael Carroll, Paul I. Moskowitz, Keith Johnson (collectively, the "Individual Defendants"), Chanticleer,, Merriman Capital, Inc. ("Merriman"), Dawson James Securities, Inc.

("Dawson James"), and Creason & Associates P.L.L.C. ("Creason"); 2) a claim for violation of Section 12(a)(2) of the Securities Act against Merriman and Dawson James (collectively, the "Underwriter Defendants"); and 3) a claim for violation of Section 15 of the Securities Act against the Individual Defendants and Mark Hezlett.

On April 5, 2013, the Individual Defendants and Chanticleer (collectively, the "Chanticleer Defendants") moved to dismiss the Complaint. On that same day, Defendant Creason moved separately to dismiss the Complaint and for more definite statement. On April 22, 2013, Plaintiffs filed an opposition to the motions filed by the Chanticleer Defendants and Creason. On April 29, 2013, Creason filed its reply to Plaintiffs' opposition to its motion to dismiss and for more definite statement. On May 9, 2013, Chanticleer Defendants filed their reply to Plaintiffs' opposition to their motion to dismiss.

On May 17, 2013, Plaintiff filed a notice of voluntary dismissal of the Underwriter Defendants from this action. The Court issued an order dismissing the Underwriter Defendants on May 22, 2013.

On September 17, 2013, the Court issued an order denying the Chanticleer Defendants' motion to dismiss and Creason's motion for more definite statement. Further, the Court allowed Plaintiffs' claim against Creason to proceed with respect to Chanticleer's financial statement for the fiscal year ending December 31, 2011, but not for the quarter ending March 31, 2012.

The parties engaged in substantial document discovery, which culminated in the production and review of over 34,000 pages of documents.  Thereafter,  Chanticleer Defendants, Creason (collectively, "Defendants") and Plaintiffs engaged in protracted and hard fought negotiations with each other with respect to a compromise and settlement of the Complaint.  The parties and Chanticleer Defendants' liability insurer engaged in a mediation conference with

nationally regarded mediator, Hunter R. Hughes, Esq., on December 10, 2013. While the mediation did not result in a settlement, over the next several weeks, the parties agreed to a proposed settlement of $850,000 (eight hundred fifty thousand dollars) in cash, of which XL Specialty shall pay $837,500 in cash on behalf of the Chanticleer Defendants and Creason shall pay $12,500.

The Settlement seeks to resolve claims for following Class: those individuals and entities who purchased Chanticleer securities either (i) pursuant and/or traceable to the Registration Statement issued in connection with Chanticleer's June 21, 2012 public offering, or (ii) on the open market between June 21, 2012 and February 19, 2013, inclusive (the "Class Period"). Excluded from the class are all named defendants and all individuals who were officers and directors of Chanticleer or Creason on or before February 19, 2013, members of the immediate families of each, legal representatives, heirs, successors or assigns of each, and any entity in which any named defendant has or had a controlling interest.

As part of the Settlement concurrently herewith, the parties have filed a stipulation to amend the complaint to add J'Marr Comer as named plaintiff to this action.

## III.     THE COURT SHOULD PRELIMINARILY CERTIFY THE SETTLEMENT CLASS

"A class may be certified solely for purposes of settlement where a settlement is reached before a litigated determination of the class certification issue," once all factors of Rule 23(a) of the Federal Rules of Civil Procedure and at least one of the subsections of Rule 23(b) are met. *Borcea v. Carnival Corp.*, 238 F.R.D. 664, 677 (S.D. Fla. 2006); *see also Kirkpatrick v. J.C. Bradford & Co.*, 827 F.2d 718, 721 n.2 (11th Cir. 1987). A court may consider the merits of the case only to the extent necessary to determine whether the requirements of Rule 23 are satisfied. *See Valley Drug Co. v. Geneva Pharm., Inc.*, 350 F.3d 1181, 1189 n.15 (11th Cir. 2003).

Therefore, trial courts are not permitted to "reject class certification based only on its assessment of plaintiffs' likelihood of success on the claim." *LaGrasta v. First Union Sec., Inc.*, 2005 WL 1875469, at *2 (M.D. Fla. Aug. 8, 2005). Here, Plaintiffs seek certification for purposes of the Settlement.

### A.     The Action Meets the Requirements of Rule 23(a)

#### 1.     Numerosity

Rule 23(a)(1) requires that the class be so numerous that joinder of all members is impracticable. "Impracticable does not mean impossible; plaintiffs need only show that it would be extremely difficult or inconvenient to join all members of the class." *In re Domestic Air Transp. Antitrust Litig.*, 137 F.R.D. 677, 698 (N.D.Ga. 1991) (citation omitted).  Indeed, courts generally presume that plaintiffs establish numerosity when the claims involved securities traded nationally.  *In re Healthsouth Corp. Sec. Litig.*, 257 F.R.D. 260, 274 (N.D. Ala. 2009).

Here, Chanticleer had approximately 3.7 million shares of common stock outstanding trading on the NASDAQ during the Class Period. While the exact number of investors who purchased the Company's securities during the Class Period is currently unknown, the proposed Class plainly exceeds the minimum numbers needed to satisfy numerosity under Rule 23. *See Cox v. Am. Cast Iron Pipe Co.*, 784 F.2d 1546, 1553 (11th Cir. 1986) ("while there is no fixed numerosity rule, generally less than twenty-one is inadequate, more than forty adequate, with numbers between varying according to other factors.) (internal quotation omitted).

#### 2.     Commonality

Rule 23(a)(2) requires the existence of "questions of law or fact common to the class." Commonality "does not require that all the questions of law and fact raised by the dispute be common." *Cox*, 784 F.2d at 1557. Rather, "[m]any courts have held that where a common scheme of deception has been alleged, a common question exists." *Powers v. Stuart-James Co.,*

*Inc.*, 707 F. Supp. 499, 502 (M.D. Fla. 1989). Consequently, this requirement is easily met in most cases. *See* 4 H. Newberg & A. Conte, Newberg on Class Actions, § 3.10 (4th ed. 2002)

Here, there are central questions of whether: (1) Defendants made misrepresentations or omissions of material facts in the Registration Statement and Prospectus filed; and (2) Defendants can establish their affirmative defenses, are the same for each members of the proposed Class. Therefore, Defendants' alleged liability will be common to all members of the proposed Class and the claims of each member arise from the same operative facts and legal theories. *See Cheney v. Cyberguard Corp.*, 213 F.R.D. 484, 491 (S.D. Fla. 2003) (finding commonality where, "like many other similar securities cases in this Circuit," the allegations involved a "unified scheme to defraud investors through misrepresentations and omissions of information and because several common questions of law exist").

### 3.    Typicality

Rule 23(a)(3) requires plaintiffs to demonstrate that each representative claims "arise from the same event or patterns or practice and are based on the same legal theory" as those of the other class members. *Cooper v. Pac. Life Ins. Co.*, 229 F.R.D. 245, 258 (S.D. Ga. 2005). The class representative and the class members need not be identically situated. *See Kornberg v. Carnival Cruise Lines, Inc.,* 741 F.2d 1332, 1337 (11th Cir. 1984). "The important inquiry is whether the proposed class representatives' claims have the *same essential characteristics* as those of the proposed class." *In re HealthSouth Corp. Sec. Litig.*, 213 F.R.D. 447, 458 (N.D. Ala. 2003) (citing *Appleyard v. Wallace*, 754 F.2d 955 (11th Cir.1985)). Thus, minor "factual differences between the class members' and the representative's claims" will not defeat typicality. *Wells v. HBO & Co.*, 1991 WL 131177, at *3 (N.D. Ga. Apr. 24, 1991).

Plaintiffs are the proposed Class representatives in this case.  Plaintiffs, along with all other members of the proposed Class, purchased Chanticleer securities during the Class Period.

Consequently, Plaintiffs assert the same claims, make the same legal and factual arguments as the proposed Class and "allege the same types of harm and entitlement to relief." *In re Checking Account Overdraft Litig.*, 275 F.R.D. 654, 659 (S.D. Fla. 2011). Therefore, Plaintiffs' claims are typical.

### 4.      Adequacy

Rule 23(a)(4) requires the representative parties to fairly and adequately protect the interests of the class. Rule 23(a)(4) has two requirements: (1) class counsel must be qualified, experienced and generally able to conduct the litigation; and (2) the representative plaintiff's interests must not be antagonistic to those of the class. *Griffin v. Carlin*, 755 F.2d 1516, 1532 (11th Cir.1985). Pursuant to Federal Rule of Civil Procedure 23(g), adequacy of class counsel is now considered separately from the determination of the adequacy of the class representatives. In any event, both prongs of the adequacy requirement are satisfied here.

### i.      Proposed Class Representatives are Adequate

Plaintiffs, have no interests that are antagonistic to those of the members of the proposed Class. The proposed class representatives purchased Chanticleer securities during the Class Period and suffer from no disabling conflicts of interest with each other or the Class as they all have the same incentives to prove the Registration Statement and Prospectus contained false statements.  The representatives' interests are congruent with and not opposed to other Class Members' interests. Accordingly, Rule 23(a)(4) is satisfied.

### ii.      Proposed Class Counsel is Adequate

Rule 23(g) requires a court to assess the adequacy of proposed class counsel. To that end, the court must consider the following: (1) the work counsel has done in identifying or investigating potential claims in the action; (2) counsel's experience in handling class actions, other complex litigation, and claims of the type asserted in the action; (3) counsel's knowledge

of the applicable law; and (4) the resources counsel will commit to representing the class. *In re Terazosin Hydrochloride*, 220 F.R.D. 672, 701 (S.D. Fla. 2004).

Lead Counsel is experienced in prosecuting class actions as class counsel and/or lead counsel, having successfully prosecuted securities class actions in courts throughout the country. Courts have consistently found Lead Counsel, The Rosen Law Firm, P.A. to be well suited as class counsel in securities class actions. A copy of the Firm's resume is attached hereto as Exhibit 1 to Declaration of Laurence Rosen ("Rosen Decl.").

**B.     The Proposed Settlement Class Satisfies Rule 23(b)(3)**

Rule 23(b)(3) requires that common questions of law or fact predominate over any questions affecting only individual members and that a class action be superior to other available methods for the fair and efficient adjudication of the dispute. These conditions are present here.

**1.     Common Questions Predominate**

The predominance inquiry "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods. v. Windsor*, 521 U.S. 591, 623 (1997). "Predominance is a test readily met in certain cases alleging . . . securities fraud[.]" *Id.* at 625. Plaintiffs need not show that all questions of law or fact are common, but only that some questions are common and that they predominate over individual questions. *In re Theragenics Corp. Sec. Litig.*, 205 F.R.D. 687, 697 (N.D. Ga. 2002) (citing *Cox*, 784 F.2d at 1557)).

Here, the common questions of law and fact predominate over any conceivable individual question for the Defendants' alleged misconduct affected all members of the proposed Class in the same manner. Thus, each member of the proposed Class would be required to demonstrate the same facts to establish the Defendants' alleged violations of the Securities Act. Generalized proof will be necessary with respect to whether: (1) the Defendants' alleged misstatements and omissions were materially false; (2) the loss in value of Chanticleer securities was due to

something other than misleading statements within a registration statement; and (3) some of the Chanticleer Defendants had not reason to know the statements they made were false.

The predominance of common questions are typically found where, as here, "a class of purchasers allegedly [has been] defrauded over a period of time by similar misrepresentations, or even a common thread or scheme to which all alleged non-disclosures relates." *CV Reit, Inc. v. Levy*, 144 F.R.D. 690, 699 (S.D. Fla. 1992).   Thus, the predominance requirement of Rule 23(b)(3) is met.

### 2.       A Class Action Is Superior to Other Methods of Adjudication

Rule 23(b)(3) further requires that "a class action [be] superior to other available methods for fairly and efficiently adjudicating the controversy," and provides factors relevant to a finding of superiority, including: (a) the interest of class members in individually controlling the prosecution or defense of separate actions; (b) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (c) the desirability to concentrate litigation of claims in this forum; and (d) the manageability of a class action.

Here, "[s]eparate actions by each of the class members would be repetitive, wasteful, and an extraordinary burden on the courts." *Kirkpatrick*, 827 F.2d at 725. Further, certification is the superior method to resolving the claims of the proposed Class against the Defendants. In the absence of the settlement class device, the Defendants could not obtain a class-wide release, and would lack the incentive to enter into the Settlement. Moreover, certification of a class for settlement purposes permits the Settlement to be administered in an organized and efficient manner. *See Wells,* 1991 WL 131177, at *7 ("Class actions are a particularly appropriate and desirable means to resolve claims based on the securities laws, since the effectiveness of the securities laws may depend in large measure on the application of the class action device.").

Consequently, the Court should find that the requirements of both Rules 23(a) and (b) are met, and certify the proposed Class.

## IV.  THE PROPOSED SETTLEMENT MEETS THE CRITERIA NECESSARY FOR THIS COURT TO GRANT PRELIMINARY APPROVAL

Rule 23(e) requires the judicial approval of any settlement of claims brought on a class-wide basis. Approval of a proposed settlement is within the Court's discretion and is to be exercised in conformity with "[p]ublic policy [that] strongly favors the pretrial settlement of class action lawsuits." *In re U.S. Oil & Gas Litig.*, 967 F.2d 489, 493 (11th Cir. 1992). Indeed, this policy is particularly applicable to class actions alleging securities fraud. *See Mashburn v. Nat'l Healthcare, Inc.*, 684 F. Supp. 660, 667 (M.D. Ala. 1988) ("securities fraud class actions readily lend themselves to settlement").

Rule 23(e) requires that class members be provided "notice of the proposed dismissal or compromise" of a class action.  In order to avoid serving notice of an obviously deficient settlement, "courts have resorted to a two-step approach" – holding a preliminary hearing prior to considering the final approval of a settlement. *In re Skinner Grp., Inc.*, 206 B.R. 252, 260-61 (Bankr. N.D. Ga. 1997); *Bennett v. Behring Corp.*, 737 F.2d 982, 985-86, 988 (11th Cir. 1984) (two-step process for approving class action settlement appropriate).

The preliminary approval motion provides the Court with the opportunity to determine whether: (1) the settlement has any obvious deficiencies; (2) the settlement is within the range of reasonableness; and (3) notice to the class is warranted. *See Fresco v. Auto Data Direct, Inc.*, 2007 WL 2330895, at * 4 (S.D. Fla. May 14, 2007) ("[a] proposed settlement should be preliminarily approved if it is within the range of possible approval or, in other words, [if] there is probable cause to notify the class of the proposed settlement.") (internal citations omitted); *In re Checking Account Overdraft Litig,.* 2012 WL 4173458, at *5 (S.D. Fla. Sept. 19, 2012)

("Preliminary approval is appropriate where the proposed settlement is the result of the parties' good faith negotiations, there are no obvious deficiencies and the settlement falls within the range of reason."). After preliminary approval, the class is notified of the settlement and the final fairness hearing. *See, e.g., Figueroa v. Sharper Image Corp.*, 517 F. Supp. 2d 1292, 1299 (S.D. Fla. 2007) ("If the preliminary evaluation of the proposed settlement does not disclose grounds to doubt its fairness or other obvious deficiencies ... and appears to fall within the range of possible approval, the court should direct that notice issue and should schedule a final approval hearing.") (internal quotation omitted); *In re Silicone Gel Breast Implant Prods. Liab. Litig.*, 1994 WL 114580, at *7 (N.D. Ala. Apr. 1, 1994) (granting preliminary approval and setting final hearing at future date after class has received notice). The preliminary approval process is not as rigorous and formal as the final approval process.[2]

The proposed Settlement has no obvious deficiencies and falls within a reasonable range of possible approval. First, the Settlement is the culmination of arm's-length negotiations, which included a formal mediation with an experienced and impartial mediator as well as well-informed and experienced counsel. Second, the Settlement Amount is well within the reasonable range of recoveries in securities class actions. Third, the substantial risk of continued litigation warrants preliminary approval of the proposed Settlement. Therefore, the proposed Settlement

---

[2] In the second step, the final approval of a class action settlement pursuant to Rule 23(e), the court "must find that it is fair, adequate and reasonable and is not the product of collusion between the parties." *Bennett*, 737 F.2d at 986 (internal citation omitted). Factors to consider are: (1) the likelihood of success at trial; (2) the range of possible recovery; (3) range of possible recovery at which a settlement is fair, adequate and reasonable; (4) the anticipated complexity, expense, and duration of litigation; (5) the opposition to the settlement; and (6) the stage of proceedings at which the settlement was achieved. *Id.*; *see also Faught v. Am. Home Shield Corp.*, 661 F.3d 1040, 1047 (11th Cir. 2011) (affirming lower court's *Bennett* analysis). A district court's evaluation of the *Bennett* factors "will be overturned only upon a clear showing of abuse of discretion." *Id.* In evaluating the settlement, the court may rely on the judgment of experienced counsel in the case. *See In re Smith*, 926 F.2d 1027, 1028 (11th Cir. 1991).

satisfies Rule 23(e) and should be should preliminarily approved. Further, the Court should authorize dissemination of notice to the proposed Class substantially in the form of the Notice and Summary Notice submitted herewith and in the manner set forth in the proposed Preliminary Approval Order.

### A.   The Proposed Settlement Has No Obvious Deficiencies and is the Result of Good Faith, Arm's-Length Negotiations

Courts place considerable weight to the opinion of experienced and informed counsel. *See Canupp v. Liberty Behavioral Health Corp.*, 417 F. App'x. 843, 845 (11th Cir. 2011) ("Indeed, absent fraud, collusion, or the like, a district court should be hesitant to substitute its own judgment for that of counsel"); *see also Behrens v. Wometco Enterprises, Inc.,* 118 F.R.D. 534, 539 (S.D. Fla. 1988) aff'd sub nom. *Behrens v. Wometco Enterprises*, 899 F.2d 21 (11th Cir. 1990) (The court can rely upon the judgment of experienced counsel and, absent fraud, should be hesitant to substitute its own judgment for that of counsel.) (internal quotation omitted); *Francisco v. Numismatic Guar. Corp. of Am.*, 2008 WL 649124, at *12 (S.D. Fla. Jan. 31, 2008) ("[c]ounsel's conclusions that the [s]ettlement is fair, adequate and reasonable provides strong evidence that the settlement merits the Court's approval. Here, the Court gives 'great weight to the recommendations of counsel for the parties, given their considerable experience in this type of litigation.'"). Thus, there is "a presumption of fairness" to settlements negotiated at arm's length by informed and experienced counsel. *See Checking Account* 275 F.R.D. at 661-62 (S.D. Fla. 2011).

Moreover, the Settlement was reached only after a mediation with an impartial and independent mediator and negotiation by experienced counsel. *Id* at 662. (approving settlement that was "the product of informed, good-faith, arm's-length negotiations between the parties and

their capable and experienced counsel, and [which] was reached with the assistance of a well-qualified and experienced mediator").

Lead Counsel has ample experience prosecuting securities class actions. Rosen Decl. Ex. 1. Further, Lead Counsel is well informed about the strengths and weaknesses of the claims against the Defendants – the Settlement was reached only after a thorough investigation of the facts and merits of the legal claims and defenses, briefing on Defendants' motions to dismiss, consultation with damages and accounting consultant, and submissions and briefing during mediation.  Thus, Lead Counsel and Plaintiffs had a sufficient understanding of the claims and defenses to negotiate this excellent result.  *See, In re Elan Sec. Litig.*, 385 F. Supp. 2d 363, 370 (S.D.N.Y. 2005) (class counsel had sufficient information to make an informed judgment based on interviews of former employees, review of documents relating to SEC investigation and consultation with accounting and damages experts); *cf., In re Corrugated Container Antitrust Litig.*, 643 F.2d 195, 211 (5th Cir. 1981) ("formal discovery [is not] a necessary ticket to the bargaining table.").

In addition, the Settlement has no obvious deficiencies.[3] Along with an all cash recovery, all members of the proposed Class, including Plaintiffs, will be treated fairly and in a similar manner –  each recovering their pro rata share of the Net Cash Settlement Amount according to the Plan of Allocation.

**B.    The Settlement Falls within the Range of Possible Approval**

"Particularly in class action suits, there is an overriding public interest in favor of settlement [because it] is common knowledge that class action suits have a well deserved reputation as being most complex." *Strube v. Am. Equity Inv. Life Ins. Co.*, 226 F.R.D. 688, 698

---

[3] "[C]ourts respect the integrity of counsel and presume the absence of fraud or collusion in negotiating the settlement, unless evidence to the contrary is offered." *Newberg on Class Actions,* § 11.51 at 11.88 (4th ed. 1992).

(M.D. Fla. 2005) (quoting *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977)). Part of that complexity stems from the calculation of damages and determining the range of possible recovery. This generally requires expert testimony and invariably leads to a "battle of the experts" at trial.  Here, Plaintiffs' expert has calculated maximum damages—meaning Plaintiffs prevail on every claim and the fact finder accepts Plaintiffs' damages model—to be approximately $2.4 million. Defendants have denied and continue to deny that the proposed Class suffered any damages at all. Indeed, Plaintiffs acknowledge that recoverable damages could be significantly less at trial, if the Court accepted Defendants' competing analysis that showed a much smaller damages number.  Consequently, the range of possible recovery is wide and currently indeterminate, which supports preliminary approval of this Settlement that secures immediate compensation for the proposed Class. Furthermore, this settlement represents approximately 35.4% recovery for the class, which is an excellent result reflecting the fairness, reasonableness, and adequacy of the settlement given that Plaintiffs still face significant hurdles in the prosecution of this action. *See, e.g.*, *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 455 n. 2 (2d Cir. 1974) ("[T]here is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery."); *In re Charter Commc'ns, Inc. Sec. Litig.*, 2005 WL 4045741, at * 6 (E.D. Mo. June 30, 2005) (observing average settlements since 1995 were 5.5% to 6.2% of estimated losses).

Indeed, recent studies indicate that the median settlement value as a percentage of damages for cases of this size is 17.1%. *See* Dr. Renzo Comolli, Sukaina Klein, Ron Miller, and Svetlana Starykh, *Recent Trends in Securities Class Action Litigation: 2012 Full-Year Review*, at p. 32.[4]  The settlement here represents more than double that at 35.4%-- an excellent result.

---

[4] http://www.nera.com/nera-files/PUB_Year_End_Trends_2012_1113.pdf.

### C.        Substantial Risks of Continued Litigation

The ability to avoid the risk, uncertainty, expenses, and duration of further litigation should be considered by the Court in reviewing this motion. It is well settled that "[t]he risks of litigation are what ultimately leads to settlement." *Chatelain v. Prudential- Bache Sec., Inc.*, 805 F. Supp. 209, 215 (S.D.N.Y. 1992). While Plaintiffs are prepared to go to trial against the Defendants, and remain confident in their ability to ultimately prove their claims, a trial is always a risky proposition. *See Gutter v. E.I. Dupont De Nemours & Co.*, 2003 U.S. Dist. LEXIS 27238 , at *5 (S.D. Fla. May 30, 2003) ("the risks associated with proceeding to trial in [ ... ] complex securities litigation, particularly the risks associated with establishing materiality, causation and damages favor approval of the [s]ettlement").

Here, even though the motions to dismiss were largely defeated, Plaintiffs faced risks in litigating this action to a verdict, which would require that Plaintiffs prevail at summary judgment, class certification, and trial. Plaintiffs faced particular risks with respect to proving the full amount of damages sustained by the Class, as well as the possible difficulty of responding to the affirmative defenses to be raised by Defendants.

Plaintiffs also faced pragmatic issues relating to Defendants' limited resources. For example, Creason had no insurance coverage and is a small auditing firm.  While the Chanticleer Defendants' had insurance coverage, it is a wasting policy.  Had this litigation proceeded to trial the insurance proceeds would have certainly all been expended.  The proposed Settlement is nearly all of the remaining insurance proceeds.

Plaintiffs and their counsel recognize the significant risks and uncertainty involved in pursuing Plaintiffs' claims through summary judgment, trial, and subsequent appeals. *See, e.g., Robbins v. Kroger Props. Inc.*, 116 F.3d 1441 (11th Cir.), reh'g en banc denied, 129 F.3d 617 (11th Cir.1997) (finding no loss causation and overturning $81 million jury verdict); *Badger v. S.*

*Farm Bureau Life Ins. Co.*, 612 F.3d 1334, 1347 (11th Cir. 2010) (reversing $31.7 million jury verdict).  Moreover, Plaintiffs and their counsel are cognizant of the issues of proof under and possible defenses to the violations of securities laws alleged.

Under these circumstances, the proposed settlement balances the risks, expenses, and delay inherent in complex cases among the respective parties. Thus, the benefits created by the Settlement weigh in favor of granting the motion for preliminary approval. Further, under the proposed settlement, Defendants will pay $850,000.00 in exchange for the release of claims against them. In light of the risks of continued litigation and the time and expense to be incurred in prosecuting this action through a trial, the Settlement represents a meaningful recovery that is in the best interest of the class.

## V.   THE COURT SHOULD APPROVE THE PROPOSED FORMS OF NOTICE AND PLAN FOR PROVIDING NOTICE

Plaintiffs request that the Court approve the form and content of the proposed Notice and Summary Notice. (*See* Exs. C and E to the Stipulation). Consistent with Rules 23(c)(2)(B) and 23(e)(1), the proposed Notice will be mailed to all identifiable Class Members and provide them with detailed information concerning: (a) the rights of Class Members, including the manner in which to object; (b) the nature, history, and progress of the litigation; (c) the proposed Settlement; (d) the process for filing a proof of claim; (e) a description of the Plan of Allocation; (f) the fees and expenses to be sought by Lead counsel; and (g) the necessary information for any Class Member to examine the Court records should they desire to do so. The Notice also sets forth instructions to securities brokers and other nominee holders for forwarding the Notice to those persons for whom the nominees held shares in street name.

The Notice also satisfies the PSLRA's separate disclosure requirements by, inter alia: stating the amount of the Settlement on both an aggregate and average per share basis; providing

a brief statement explaining the reasons why the parties are proposing the Settlement; stating the maximum amount of attorney's fees and expenses (both on an aggregate and average per share basis) that Lead Counsel will seek; and providing the names, addresses, and telephone numbers of representatives of the Claims Administrator and Lead Counsel who will be available to answer questions from Settlement Class Members. *See* 15 U.S.C. § 78u-4(a)(7). Both forms of Notice will also disclose the date, time and location of the Fairness Hearing and the deadlines for seeking exclusion and submitting Claim forms and any objections to the Settlement, the Plan of Allocation, or to Lead Counsel's requested attorney's fees and expenses. These disclosures are thorough and should be approved.

Rule 23(c)(2)(B) requires a certified class to receive "the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Similarly, Rule 23(e)(1) requires a court to "direct notice in a reasonable manner to all class members who would be bound by a proposed settlement, voluntary dismissal, or compromise." The proposed Notice plan readily meets these standards and is typical of Notice plans in similar actions.

## VI.    CONCLUSION

Plaintiffs respectfully request that the Court enter the proposed Order, find preliminarily that the Settlement is reasonable and fair, and find that notification to the Class Members of the terms of the Settlement and of their rights in connection with the Settlement is warranted.

Dated: March 31, 2014                          Respectfully submitted,

                                               THE ROSEN LAW FIRM, P.A.

                                               Buy:    /s/ Laurence Rosen
                                               Laurence Rosen, Esq.
                                               Fla. Bar No. 0182877
                                               Email: lrosen@rosenlegal.com
                                               275 Madison Avenue, 34th Floor

New York, NY 10116
Phone: (212) 686-1060
Fax: (212) 202-3827

Lead Counsel for Plaintiffs

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this on the 31st of March, 2014, a true and correct copy of the foregoing document was served by CM/ECF to the parties registered to the Court's CM/ECF system.


<u>/s/ Laurence Rosen    </u>