`

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA**

Case No. 12-81123-CIV-COHN/SELTZER

FRANCIS HOWARD, Individually and on Behalf of All Others Similarly Situated,

 Plaintiff,

 VS.

CHANTICLEER HOLDINGS, INC., MICHAEL D. PRUITT, ERIC S. LEDERER, MICHAEL CARROLL, PAUL I. MOSKOWITZ, KEITH JOHNSON, MARK HEZLETT, MERRIMAN CAPITAL, INC., DAWSON JAMES SECURITIES, INC., CREASON & ASSOCIATES P.L.L.C.

 Defendants.

**PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION
SETTLEMENT; MEMORANDUM OF LAW IN SUPPORT**

**MOTION**

Francis Howard and Ja'Marr Comer (collectively "Lead Plaintiffs" or "Plaintiffs"), upon the accompanying Memorandum of Law and the accompanying Declaration of Laurence Rosen In Support of Final Approval of Class Action and An Award of Attorneys' Fees and Reimbursement of Expenses ("Rosen Decl.") and the exhibits attached thereto, hereby move the Court pursuant to Fed. R. Civ. P. 23(e) for final approval of the Class Action Settlement of this action for $850,000 and the Plan of Allocation.  The Settlement and Plan of Allocation are fair, reasonable, and adequate and should be approved by the Court.

The Proposed Judgment will be submitted with Plaintiffs' reply papers—which is after the deadline for opting out of Settlement.

**MEMORANDUM OF LAW**

**I.   PRELIMINARY STATEMENT**

The Settlement was reached only after Lead Counsel, *inter alia*:  (a) conducted a legal and factual investigation relating to the claims in this action; (b) drafted the initial and operative amended complaint; (c) defeated Defendants' motions to dismiss; (d) engaged in extensive documents discovery and reviewed over 34,000 pages of documents; (e) consulted with accounting expert relating the complex accounting issues it this case; (f) consulted with financial consultant to obtain a preliminary damages analysis; (g) prepared a mediation statement and participated in an all-day mediation with Hunter Hughes, Esq. in Atlanta; and (h) negotiated and drafted the settlement documentation.  Therefore, Plaintiffs and Lead Counsel were well informed of the strengths and weaknesses of the case, the risks of continued litigation, and the propriety of settlement.  *See* Rosen Decl., ¶7.

The Settlement is an excellent result.  The Settlement represents 35.4% of Plaintiffs' best case scenario of damages, *i.e.*, Plaintiffs prevail on all claims and appeals.  *See* Rosen Decl., ¶ 40

This percentage of recovery is more than double the median value of recoveries of similar securities class action settlements. Plaintiffs were able achieve this Settlement despite the complex damages and factual questions presented in this action and the formidable legal opposition provided by defense counsel.  The Settlement also represents nearly all of the Defendants' insurance coverage.  *See* Rosen Decl., ¶39

Pursuant to the Court's Preliminary Approval Order, over 2,400 notice and claim packets were mailed to potential  Settlement Class Members and nominees. *See* Declaration of Josephine Bravata Concerning The Mailing of The Notice Of Pendency and Proposed Settlement of Class Action and Proof of Claim and Release Form attached as Exhibit 1 to the Rosen Declaration ("Bravata Decl."). ¶6.  To date, no objections or requests for exclusion have been submitted. *Id.,* at ¶¶10-11.  The deadline to object of seek exclusion is July 24, 2014.  *Id.*

In short, the Settlement is an excellent result and the product of arm's-length negotiations among the Settling Parties, that included a mediation with nationally regarded mediator Hunter Hughes, Esq. and  further negotiations by experienced counsel with the aid if Mr. Hughes. For these reasons and those set forth below, Plaintiffs respectfully submit that the proposed Settlement strongly warrants approval by this Court as fair, reasonable and adequate.

II.     **FINAL CERTIFICATION OF THE SETTLEMENT CLASS IS APPROPRIATE**

A necessary part of the settlement process for class actions is the certification of the class before or at the time the settlement is approved by the court. It is widely recognized that a class action is a particularly appropriate mechanism for individual shareholders to obtain recovery in cases of alleged federal securities laws violations *See, e.g., Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 809 (1985) (class actions allow "[Lead] [P]laintiffs to pool claims which would be uneconomical to litigate individually …[M]ost of the [Lead P]laintiffs would have no realistic day in court if a class action were not available"). The Court previously granted preliminary

2

certification of the Settlement Class for settlement purposes only. *See* Dkt. # 66.  Because nothing has occurred since then to cast doubt on whether the applicable prerequisites of Rule 23 are met, the Court should now finally certify the Settlement Class.

## III.   THE SETTLEMENT SHOULD BE FINALLY APPROVED

### A.   Applicable Standards For Final Approval

There is a "strong judicial policy favoring settlement." *Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984). "[S]ettlements [of class actions] are 'highly favored in the law and will be upheld whenever possible.'" *Bennett v. Behring Corp.*, 96 F.R.D. 343, 348 (S.D. Fla. 1982), *aff'd*, 737 F.2d 982 (11th Cir. 1984); *accord In re U.S. Oil & Gas Litig.*, 967 F.2d 489, 493 (11th Cir. 1992); *Ass'n for Disabled Ams., Inc. v. Amoco Oil Co.*, 211 F.R.D. 457, 466 (S.D. Fla. 2002). As the court in *U.S. Oil & Gas* noted:

> Complex litigation – like the instant [class action] case – can occupy a court's docket for years on end, depleting the resources of the parties and the taxpayers while rendering meaningful relief increasingly elusive. Accordingly, the Federal Rules of Civil Procedure authorize district courts to facilitate settlements . . . .

967 F.2d at 493.

In approving a settlement under Federal Rule of Civil Procedure 23(e), the district court must find that it "'is fair, adequate and reasonable and is not the product of collusion between the parties.'" *Bennett*, 737 F.2d at 986. "The Court is required to make a two part determination that: 1) there is no fraud or collusion in reaching the settlement, and 2) the settlement is fair, adequate and reasonable." *Warren v. City of Tampa*, 693 F. Supp. 1051, 1054 (M.D. Fla. 1988) *aff'd,* 893 F.2d 347 (11th Cir. 1989).

The Eleventh Circuit has held that in determining whether a proposed settlement is "fair, adequate and reasonable," a court should look to the following *Bennett* factors:

> (1) the likelihood of success at trial; (2) the range of possible recovery; (3) the point on or below the range of possible recovery at which a settlement is fair, adequate and

3

reasonable; (4) the complexity, expense and duration of litigation; (5) the substance and amount of opposition to the settlement; and (6) the stage of proceedings at which the settlement was achieved.

*Bennett*, 737 F.2d at 986; *see also Behrens v. Wometco Enters., Inc.*, 118 F.R.D. 534, 537 (S.D. Fla. 1988), *aff'd*, 899 F.2d 21 (11th Cir. 1990). In addition, approval of a class action settlement, including application of the foregoing factors, "is committed to the sound discretion of the district court." *U.S. Oil & Gas*, 967 F.2d at 493; *Bennett*, 737 F.2d at 987 (same).

Finally, in evaluating a settlement, the court "is entitled to rely upon the judgment of experienced counsel for the parties." *Canupp v. Sheldon*, 2009 WL 4042928, at *5 (M.D. Fla. Nov. 23, 2009); *Ass'n for Disabled Ams.*, 211 F.R.D. at 470 (same); *see also Warren*, 693 F. Supp. at 1060 (in approving settlement of class action, "[t]he Court is affording great weight to the recommendations of counsel for the parties, given their considerable experience in this type of litigation"). Indeed, in reviewing a settlement under Rule 23, "the trial judge, absent fraud, collusion, or the like, should be hesitant to substitute its own judgment for that of counsel." *Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977); *accord In re Smith*, 926 F.2d 1027, 1028 (11th Cir. 1991).

### B. The Settlement is Fair, Adequate, and Reasonable Under the *Bennett* Factors

#### 1. The Potential Obstacles to Success at Trial

The first *Bennett* factor is "the likelihood of success at trial." *Bennett*, 737 F.2d at 986. "In assessing plaintiffs' likelihood of success at trial for purposes of determining whether the Settlement, [as amended] is fair, adequate and reasonable, the Court should make only a 'limited inquiry into whether the possible rewards of continued litigation with its risks and costs are outweighed by the benefits of the settlement.'" *Garst v. Franklin Life Ins. Co.*, 1999 U.S. Dist. LEXIS 22666, at *62 (N.D. Ala. June 28, 1999).

4

Although Plaintiffs believe that their claims against Defendants are meritorious, there were significant obstacles to success at trial. Though the Complaint survived Defendants' motions to dismiss, Plaintiffs faced material challenges at the proof stage relating to damages and materiality. At summary judgment or at trial, Defendants would continue to argue that Plaintiffs cannot prove materiality based on the nature of the accounting adjustments. Defendants would likewise argue that the damages in this case are nonexistent or drastically diminished as the price of Chanticleer stock recovered and traded above the offering price for during significant parts of the class period and thereafter. *See* Rosen Decl., ¶37.

These issues would have been before the jury and would have required significant expert testimony and analysis. It would not be possible to predict with any confidence how a jury would resolve such a dispute. *See, e.g., Zuckerman v. Smart Choice Auto Group, Inc.*, 2001 WL 686879, at *10 (M.D. Fla. May 3, 2001) ("The determination of damages, like the determination of liability, is a complicated and uncertain process, typically involving conflicting expert opinions."); *Behrens*, 118 F.R.D. at 542 ("In the battle of experts, 'it is virtually impossible to predict with certainty which testimony will be credited.'").

As the court held in *Garst*, "[t]he existence of these (and other) potential obstacles to plaintiffs' success on the merits argues in favor of approving the settlement." *Garst*, 1999 U.S. Dist. LEXIS 22666, at *64; *accord Behrens*, 118 F.R.D. at 540 (approving class action settlement because "[i]f the plaintiff pursued this cause through trial, the likelihood of achieving any success would be at risk"); *see Beavers v. Am. Cast Iron Pipe Co.*, 164 F. Supp. 2d 1290, 1298 (N.D. Ala. 2001) ("there are both strengths and weaknesses in each party's position[;] [t]his uncertainty of outcome is another factor favoring approval of the settlement").

Because of the risks associated with continuing to litigate and proceeding to trial, there was a danger that Plaintiffs would not have prevailed against Defendants on any of their claims,

in which case the Settlement Class would have received nothing. Therefore, Lead Counsel believes that the Settlement, as amended, is in the best interest of the Settlement Class. *See* Rosen Decl., ¶¶52-55.

### 2. Considering the Range of Possible Recovery, the Settlement Is Clearly Within the Range of Reasonableness

"The second and third factors in the Eleventh Circuit's *Bennett* analysis call for the Court to determine 'the possible range of recovery' and then ascertain where within that range 'fair, adequate, and reasonable settlements lie.'" *Garst*, 1999 U.S. Dist. LEXIS 22666, at *64; *see also In re Sunbeam Sec. Litig.*, 176 F. Supp. 2d 1323, 1331 (S.D. Fla. 2001) ("'the second and third considerations of the *Bennett* test are easily combined.'"); *accord Behrens*, 118 F.R.D. at 541.

"[T]he Court must determine 'whether [the settlement amount] falls within the "range of reasonableness," not whether it is the most favorable possible result in the litigation.'" *Garst*, 1999 U.S. Dist. LEXIS 22666, at *68 (quoting *In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. 297, 319 (N.D. Ga. 1993)). As *Garst* observed:

> "[T]he fact that a proposed settlement may only amount to a fraction of the potential recovery does not, in and of itself, mean that the proposed settlement is inadequate; there is no reason why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery."

*Garst*, 1999 U.S. Dist. LEXIS 22666, at *64-*65; *accord Sunbeam*, 176 F. Supp. 2d at 1332; *Behrens*, 118 F.R.D. at 542

In this case, Lead Counsel retained a damages expert who concluded that Plaintiffs' "best case" damages recovery, *i.e.*, were Plaintiffs successful in opposing all of Defendants' arguments and completely prevailed on every claim, would be $2.4 million. Rosen Decl., ¶40 Defendants have disputed Plaintiffs' damages estimates and, under their analysis, assert Class-wide damages to be much less. *Id.* at ¶37. Thus, the Settlement represents 35.4% of the total recovery in the

best possible outcome of this action, which is an excellent recovery. *See In re Prudential Sec., Inc. L.P. Litig.*, 1995 WL 798907 (S.D.N.Y. Nov. 20, 1995) (approving settlement of between 1.6% and 5% of claimed damages); *In re Rite Aid Corp. Sec. Litig.*, 146 F.Supp.2d 706, 715 (E.D. Pa. 2001) (noting that since 1995, class action settlements have typically recovered "between 5.5% and 6.2% of the class members' estimated losses.").

Recent studies indicate that the median settlement value as a percentage of damages for cases such as this one with $2.4 million in damages is 17%. *Recent Trends in Securities Class Action Litigation: 2012 Full-Year Review* (the "NERA Study"), at 32 attached to Rosen Decl., Exhibit 2. The Settlement provides Class Members with approximately 35.4% of Plaintiffs' estimated best possible result, assuming not only complete victory, but also Defendants' unlimited resources for payment of a judgment. The result here is more than double the historical median—an excellent result.

Additionally, the Settlement provides for payment to Class Members now, without delay, and not some wholly-speculative payment of a hypothetically-larger amount years down the road. "[M]uch of the value of a settlement lies in the ability to make funds available promptly." *In re "Agent Orange" Prod. Liab. Litig.*, 611 F. Supp. 1396, 1405 (E.D.N.Y. 1985). Moreover, the Settlement represents a recovery to Class Members of nearly all of Defendants' insurance coverage totaling $1 million[1]—which were wasting policies that would be substantially depleted or gone by the time this action was tried and survived the expected post-trial motions and appeals. Any additional recovery would be highly speculative, and would require many years of additional litigation with no promise of recovering any personal assets of the Individual Defendants.

---

[1] Creason Defendants had no insurance coverage.

Therefore, "the proposed Settlement provides relief that is fair and adequate and within the 'range of reasonableness,'" and this factor favors approval of the Settlement. *Garst*, 1999 U.S. Dist. LEXIS 22666, at *68; *see also Bennett*, 737 F.2d at 986 (affirming holding that class action settlement was fair, adequate, and reasonable, because "compromise is the essence of settlement").

### 3. The Complexity, Expense, and Likely Duration of Continued Litigation

Though Plaintiffs have conducted substantial document discovery, further litigation against Defendants would necessarily involve significant additional time and money for the completion of document, deposition discovery, expert discovery, class certification, summary judgment proceedings, trial, and possible appeals. In light of the costs and delays inherent in litigating this case to trial, the "unpredictability of a lengthy and complex . . . trial" – as well as the likelihood of further appellate activity if Lead Plaintiffs were to prevail at trial – "the benefits to the class of the present settlement become all the more apparent." *Ressler v. Jacobson*, 822 F. Supp. 1551, 1555 (M.D. Fla. 1992); *see also In re WorldCom, Inc. Sec. Litig.*, 388 F. Supp. 2d 319, 337 (S.D.N.Y. 2005) (approving class action settlement after finding that although the litigation prior to the settlement "was a costly undertaking for all parties . . . [n]evertheless, further litigation would have resulted in considerable additional expense").

A settlement at this juncture results in an immediate recovery without the considerable risk, expense, and delay of further litigation. Therefore, this factor weighs in favor of approval of the Settlement.

### 4. The Reaction of the Class

The reaction of class members to a proposed settlement is a significant factor to be considered and the absence of substantial objections "is excellent evidence of the settlement's fairness and adequacy." *Ressler*, 822 F. Supp. at 1556; *Access Now, Inc. v. Claire's Stores, Inc.*,

2002 WL 1162422, at *7 (S.D. Fla. May 7, 2002) ("[t]he fact that no objections have been filed strongly favors approval of the settlement"); *Garst*, 1999 U.S. Dist. LEXIS 22666, at 71-72 ("small amount of opposition strongly supports approving the Settlement").

Pursuant to the Preliminary Approval Order, Dkt. # 66, over 2,400 notice claim packets were mailed to potential Class Members and nominees. *See* Bravata Decl.,¶6. The Notice apprised Settlement Class Members of their right to, and procedure for, objecting to the Settlement, the Plan of Allocation, or to Lead Counsel's application for attorneys' fees and expenses, and the procedure to seek exclusion. *Id.,* at Ex. A. To date no Class Member has objected to any aspect of the Settlement or sought to be excluded. *Id.*, at ¶¶10-11. The deadline to object or seek exclusion is July 24, 2014. *Id.* As such, this factor supports final approval.

### 5. The Stage of Proceedings

The purpose of considering the stage of the proceedings is to ensure that plaintiffs had sufficient information to evaluate the case and to determine the adequacy of the settlement. *Behrens*, 118 F.R.D. at 544. "Comprehensive discovery is not necessary, 'only some reasonable amount of discovery' is required." *Garst*, 1999 U.S. Dist. LEXIS 22666, at *70; *accord Ressler*, 822 F. Supp. at 1555.

Here Plaintiffs and Lead Counsel had sufficient understanding of the strengths and weaknesses of their case. Plaintiffs had the benefit of motion practice on the motions to dismiss, document discovery and review of over 34,000 pages of documents, consultation with an accounting expert and financial consultant on damages, and an all-day mediation session with a regarded mediator. *See* Rosen Decl., ¶44.

Accordingly, Plaintiffs and Lead Counsel had a sufficient understanding of the facts of the case when negotiating the Settlement, such that this factor favors approval of the Settlement. *See Sunbeam*, 176 F. Supp. 2d at 1332 (because "case had progressed to a point where each side

9

was well aware of the other side's position and the merits thereof[,] [t]his factor weighs in favor of the Court finding the proposed settlement to be fair, adequate, and reasonable"); *Behrens*, 118 F.R.D. at 544.

### C. The Recommendation of Experienced Counsel Favors Approval of the Settlement

The Court is entitled to rely on the judgment of counsel, and, indeed, "'should be hesitant to substitute its own judgment for that of counsel.'" *Id.* at 539 (quoting *Cotton*, 559 F.2d at 1330); *accord In re Smith*, 926 F.2d 1027, 1028 (11th Cir. 1991); *Strube*, 226 F.R.D. at 703. Lead Counsel strongly endorses the Settlement. As the court held in *Strube*, "[Class] counsel's informed recommendation of the agreement is persuasive that approval is appropriate." *Id* at 703.

## IV.   THE PLAN OF ALLOCATION SHOULD BE APPROVED

The standard for approval of a plan of allocation is the same as the standard for approving a settlement: whether it is "fair, adequate and reasonable and is not the product of collusion between the parties." *In re Chicken Antitrust Litig. Am. Poultry,* 669 F.2d 228, 238 (5th Cir. 1982).

The Plan of Allocation was formulated with the aid of an experienced consultant. The Plan of Allocation was designed to reimburse class members to the extent of their damages under the securities laws. *See also In re Oracle Sec. Litig.*, 1994 WL 502054, at *1 (N.D. Cal. June 18, 1994) ("A plan of allocation that reimburses class members based on the extent of their injuries is generally reasonable"). After taking into account lack of loss causation and the timing of Class Members' stock purchases and sales, the Plan of Allocation does not discriminate between Class Members in the same position. The Net Cash Settlement Amount is distributed on a *pro rata* basis depending on Class Members' recognized losses. Accordingly, the Plan of Allocation is fair and adequate and should be approved.

## V. CONCLUSION

For the reasons stated herein and in the Rosen Declaration, Plaintiffs respectfully request that the Court finally approve the proposed Settlement as fair, reasonable, and adequate and enter the proposed Judgment..

Dated: July 10, 2014                                Respectfully submitted,

**THE ROSEN LAW FIRM, P.A.**


___/s/ Laiurence Rosen_____
Laurence M. Rosen
Fla. Bar No. 0182877
275 Madison Avenue, 34th Floor
New York, New York 10016
Phone: (212) 686-1060
Fax: (212) 202-3827

*Counsel for Lead Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on this on the 10th of July 2014, a true and correct copy of the foregoing document was served by CM/ECF to the parties registered to the Court's CM/ECF system.

/s/ Laurence Rosen