`

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA**

Case No. 12-81123-CIV-COHN/SELTZER

FRANCIS HOWARD, Individually and on Behalf of All Others Similarly Situated,

    Plaintiff,

    VS.

CHANTICLEER HOLDINGS, INC., MICHAEL D. PRUITT, ERIC S. LEDERER, MICHAEL CARROLL, PAUL I. MOSKOWITZ, KEITH JOHNSON, MARK HEZLETT, MERRIMAN CAPITAL, INC., DAWSON JAMES SECURITIES, INC., CREASON & ASSOCIATES P.L.L.C.

    Defendants.

**PLAINTIFFS' MOTION AN AWARD OF ATTORNEYS' FEES AND
REIMBURSEMENT OF EXPENSES; MEMORANDUM OF LAW IN SUPPORT**

1

**MOTION**

Francis Howard and Ja'Marr Comer (collectively "Lead Plaintiffs" or "Plaintiffs"), upon the accompanying Memorandum of Law and the accompanying Declaration of Laurence Rosen In Support of Final Approval of Class Action and An Award of Attorneys' Fees and Reimbursement of Expenses ("Rosen Decl.") and the exhibits attached thereto, hereby move the Court pursuant to Fed. R. Civ. P. 23(e) for an Order: (1) awarding attorneys' fees in the amount of $283,333.33; and (2) reimbursement of $21,787 in expenses that were incurred in prosecuting this action.

A [Proposed] Order approving the requested award of attorneys' fees and expenses is filed herewith.

**MEMORANDUM OF LAW**

**I.   PRELIMINARY STATEMENT**

The requested fee represents a fair market rate for counsel's services and is further supported by the contingent risk borne by Lead Counsel[1] and the result obtained.  The fees requested fall well within the parameters recognized as appropriate in federal securities class actions such as this case, both under a percentage of recovery analysis and under a lodestar cross-check analysis. The expenses incurred were all reasonable and necessary for the prosecution of the litigation and within the maximum figure proposed in the Notice sent to the Class.

Significantly, following the distribution of over 2,400 claim packets to potential Class Members, which included the Notice and Claim Form, no objections have been filed to any aspect of the Settlement, Plan of Allocation, or the requested attorneys' fees and expenses.  *See*

---

[1] Unless otherwise indicated, all capitalized terms herein shall have the same meanings as set forth in the Stipulation and Agreement of Settlement, Dkt. # 61 (the "Stipulation").

Declaration of Josephine Bravata Concerning The Mailing of The Notice Of Pendency and Proposed Settlement of Class Action and Proof of Claim and Release Form attached as Exhibit 1 to the Rosen Declaration ("Bravata Decl."). ¶ 6.  Additionally, there have been no requests for exclusion from the Settlement Class.  The deadline to submit objections and seek exclusion is July 24, 2014.  *Id.*

This Settlement – reached only after a fairly comprehensive inquiry into the merits of the claims alleged, including motion practice and substantial document discovery, along with an analysis of the potential damages that could be recovered by the Class – achieves an outstanding result for the Settlement Class.  The Settlement represents 35.4% of Plaintiffs' best case scenario of class wide damages–which is nearly double the historical median for cases of this type and size.  *See* Rosen Decl., ¶3   The Settlement occurred only after the parties engaged in an arm's length mediation conference with the regarded mediator, Hunter R. Hughes, Esq. on December 10, 2013.  *Id.*, at 18.

As compensation for their efforts, Lead Counsel is applying for an award of attorneys' fees in the amount of $283,333.333 representing one-third of the Settlement Amount and reimbursement of $21,787 in expenses reasonably incurred in the prosecution of the case. Lead Counsel has prosecuted this case for nearly two years without any compensation and has incurred significant amount in expenses without *any* guarantee of success.  In short, Lead Counsel's efforts should be rewarded for this excellent result.

## II.     THE REQUESTED FEE AND EXPENSES ARE REASONABLE AND SHOULD BE APPROVED

### A. A Reasonable Percentage of the Fund Recovered Is the Appropriate Method for Awarding Attorneys' Fees in the Eleventh Circuit

Attorneys who achieve a benefit for class members in the form of a "common fund" are entitled to be compensated for their services from that settlement fund. *See Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980) ("a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole"); *see also Camden I Condo. Ass'n v. Dunkle*, 946 F.2d 768, 771 (11th Cir. 1991).

For their efforts in creating a common fund for the benefit of the Settlement Class, Lead Counsel seeks a reasonable percentage of the fund recovered as attorneys' fees. In recent years, the percentage method of awarding fees has become widely accepted, if not the prevailing method, for awarding fees in common fund cases throughout the United States. A percentage fee award is appropriate because it encourages counsel to obtain the maximum recovery for the class at the earliest possible stage of the litigation and, hence, most fairly correlates plaintiffs' counsel's compensation to the benefit achieved for the class. This rule, known as the common fund doctrine, is established law. *See, e.g., Trs. v. Greenough*, 105 U.S. 527 (1882); *Cent. R.R. & Banking Co. of Ga. v. Pettus*, 113 U.S. 116 (1885). In *Blum v. Stenson*, 465 U.S. 886, 900 n.16 (1984), the Supreme Court recognized that under the "common fund doctrine" a reasonable fee may be based "on a percentage of the fund bestowed on the class." The percentage-of-recovery method is the only method expressly approved by the Supreme Court in common fund cases.

Indeed, the Eleventh Circuit has ruled that the percentage method is mandatory in common fund cases. *See Camden*, 946 F.2d at 774-75 ("the percentage of the fund approach is the better reasoned in a common fund case. . . [h]enceforth in this circuit, attorneys' fees awarded from a common fund shall be based upon a reasonable percentage of the fund

established for the benefit of the class"). Likewise, supporting authority for the percentage method in federal courts throughout the United States is overwhelming.[2]

There is no "hard and fast" rule dictating what constitutes a reasonable percentage of the recovery to award "because the amount of any fee must be determined upon the facts of each case." *Camden*, 946 F.2d at 775.[3]

## B. The Requested Fee is Reasonable Under the Applicable Factors

The Eleventh Circuit recommends that district courts consider several factors to determine what constitutes a reasonable percentage award. *See Camden*, 946 F.2d at 773, 775. These factors include: (i) the time and labor required; (ii) the novelty and the difficulty of the questions; (iii) the skill requisite to perform the legal service properly; (iv) the preclusion of other employment by the attorney due to the acceptance of the case; (v) the customary fee; (vi) whether the fee is fixed or contingent; (vii) time limitations imposed by the client or the circumstances;[4] (viii) the amount involved and the results obtained; (ix) the experience, reputation, and ability of the attorneys; (x) the "undesirability" of the case; (xi) the nature and

---

[2] *See Swedish Hosp. Corp. v. Shalala*, 1 F.3d 1261 (D.C. Cir. 1993); *In re Thirteen Appeals Arising out of San Juan Dupont Plaza Hotel Fire Litig.*, 56 F.3d 295, 301 (1st Cir. 1995); *Wal-Mart Stores, Inc. v. VISA U.S.A., Inc.*, 396 F.3d 96, 121 (2d Cir. 2005); *In re AT&T Corp. Sec. Litig.*, 455 F.3d 160, 164 (3d Cir. 2006); *Rawlings v. Prudential-Bache Props., Inc.*, 9 F.3d 513, 516 (6th Cir. 1993); *Florin v. NationsBank of Georgia*, 34 F.3d 560, 566 (7th Cir. 1994); *Petrovic v. Amoco Oil Co.*, 200 F.3d 1140, 1157 (8th Cir. 1999); *In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1295 (9th Cir. 1994); *Gottlieb v. Barry*, 43 F.3d 474, 483 (10th Cir. 1994). Moreover, the PSLRA, which governs this Action, contemplates that courts will award fees based on a percentage of the fund. See 15 U.S.C. §78u-4(a)(60) ("Total attorneys' fees and expenses awarded by the court to counsel for the plaintiff class shall not exceed a reasonable percentage of the amount of any damages and prejudgment interest actually paid to the class."

[3] In this regard, the Eleventh Circuit expressly noted than "an upper limit of 50% of the fund may be stated as a general rule, although even larger percentages have been awarded." *Id.* at 774-75.

[4] This factor is not applicable to this case.

5

length of the professional relationship with the client;[5] and (xii) awards in similar cases. The *Camden* court also recognized several additional factors that a court may consider in awarding a percentage fee award:

> Other pertinent factors are the time required to reach a settlement, whether there are any substantial objections by class members or other parties to the settlement terms or the fees requested by counsel, any non-monetary benefits conferred upon the class by the settlement, and the economics involved in prosecuting a class action. In most instances, there will also be additional factors unique to a particular case which will be relevant to the district court's consideration.

*Camden*, 946 F.2d at 775. While each of the above factors may be an appropriate consideration, the factors that will impact upon the appropriate percentage to be awarded as a fee in any particular case will undoubtedly vary. An analysis of the relevant factors confirms that the fee requested by Lead Counsel is reasonable and should be approved by the Court.

### 1. Time and Labor Required

Lead Counsel has devoted a significant amount of time and resources to the research, investigation, and prosecution of this action. The Settlement reached at a time when Lead Counsel and Plaintiffs were fully cognizant of the strengths and weaknesses of the case, and the risks of continued litigation.

Indeed, by the time the Settlement was reached Lead Counsel: (a) conducted a legal and factual investigation relating to the claims in this action; (b) drafted the initial and operative amended complaint; (c) defeated Defendants' motions to dismiss; (d) engaged in extensive documents discovery and reviewed over 34,000 pages of documents; (e) consulted with accounting expert relating the complex accounting issues it this case; (f) consulted with financial consultant to obtain a preliminary damages analysis; (g) prepared an mediation statement and

---

[5] Lead Counsel had no prior relationship with Plaintiffs prior to this action.

participated in an all-day mediation with Hunter Hughes, Esq. in Atlanta; and (h) negotiated and drafted the settlement documentation. *See* Rosen Decl., ¶7.

Lead Counsel expended over 583.8 hours with a resulting lodestar of $282,396, at counsel's current billing rates.[6] *See* Rosen Decl., ¶48. Thus, the requested fee of one-third of the Settlement Amount or $283,333.33 represents a multiplier of l.00. *Id.* at ¶49. While not required in the Eleventh Circuit, an analysis of the requested fee under the "lodestar/multiplier" approach further supports the reasonableness of a one-third of the Settlement Amount fee. *See, e.g.*, *Waters v. Int'l Precious Metals Corp.*, 190 F.3d 1291, 1298 (11th Cir. 1999) ("while we have decided in this circuit that a lodestar calculation is not proper in common fund cases, we may refer to that figure for comparison"). The multiplier requested here is below the range of multipliers frequently awarded in class action settlements of similar magnitude in courts within the Eleventh Circuit. *See, e.g.*, *Pinto v. Princess Cruise Lines Ltd.,* 513 F. Supp. 2d 1334, 1344 (S.D. Fla. 2007) (noting that lodestar multipliers "'in large and complicated class actions' range from 2.26 to 4.5"); *Ingram v. The Coca-Cola Co.*, 200 F.R.D. 685, 694-96 (N.D. Ga. 2001) (awarding fee representing a multiplier between 2.5 and 4); *Mashburn v. Nat'l Healthcare, Inc.,* 684 F. Supp. 679, 702 (M.D. Ala. 1988) ("A multiplier of approximately 3.1 in a national class action securities case is not unusual or unreasonable.").

As such, the time and labor expended justify the fee requested.

### 2. The Novelty and Difficulty of the Questions Involved

---

[6] Supreme Court has indicated that the use of current rather than historical rates is appropriate in examining the lodestar because current rates more adequately compensate for inflation and the loss of use of funds. *See Missouri v. Jenkins by Agyei*, 491 U.S. 274, 283-84 (1989). Courts in this Circuit also have stated that it is appropriate to use counsel's current rates in order to compensate for the delay in payment and inflation. *See, e.g., Mashburn v. Nat'l Healthcare, Inc.*, 684 F. Supp. 679, 700 (M.D. Ala. 1988). The rates utilized by The Rosen Law Firm, P.A. here were approved in *Ray v. Lundstrom*, 2012 WL 5458425 at * 4 (D. Neb. Nov. 8, 2012).

Plaintiffs faced all the "multi-faceted and complex legal questions endemic" to cases based on alleged violations of federal securities law. *Ressler v. Jacobson*, 149 F.R.D. 651, 654 (M.D. Fla. 1992); *In re Sunbeam Sec. Litig.*, 176 F. Supp. 2d 1323, 1334 (S.D. Fla. 2001) (same). Moreover, "securities actions have become more difficult from a plaintiff's perspective in the wake of the PSLRA." *In re Sterling Fin. Corp. Sec. Class Action*, 2009 WL 2914363, at *4 (E.D. Pa. Sept. 10, 2009). This Action was no exception.

While Plaintiffs prevailed in stating a claim, challenges remained in proving up Plaintiffs' case. Plaintiffs faced material challenges to damages, materiality, and causation given that the price of Chanticleer stock recovered after the restatements was announced and remained above the Offering Price for a substantial period of time. Plaintiffs would have engaged in the proverbial battle of the experts over issues relating to damages, materiality, and the accounting issues involved that would be expensive, unpredictable, and complex. Therefore, this factor supports the requested fee. *See* Rosen Decl., ¶53.

### 3. The Skill Required to Perform the Legal Services Properly, and the Experience, Reputation, and Ability of the Attorneys

The quality of the representation by Lead Counsel and the standing of Lead Counsel are important factors that support the reasonableness of the requested fee. *See Ressler*, 149 F.R.D. at 654; *see also David v. Am. Suzuki Motor Corp.*, 2010 WL 1628362, at *8 n. 15 (S.D. Fla. Apr. 15, 2010) (a court should consider "the skill and acumen required to successfully investigate, file, litigate, and settle a complicated class action lawsuit such as this one").

The quality of Lead Counsel's work on this case, in addition to being aggressively diligent, was substantively excellent. From the outset, Lead Counsel marshaled considerable resources and devoted significant time in the research and investigation of facts to support a pleading that could survive a motion to dismiss and position the litigation for class certification.

8

This action involved complex damages and accounting issues. Lead Counsel through their efficient and effective litigation strategies were able to achieve the Settlement that represents 35.4% of Plaintiffs' best case scenario of damages– meaning that Plaintiffs prevail at trial on every point and defeat all appeals. The Settlement represents more than double the median value of settlements of for cases of this type. *See* Dr. Renzo Comolli, Ron Miller, John Montgomery, Svetlana Starykh, *Recent Trends in Securities Class Action Litigation: 2012 Full-Year Review* (the "NERA Study"), at 33, attached to Rosen Decl., Exhibit 2.  A copy of Lead Counsel's firm resume is attached as Exhibit 1 to the Declaration of Laurence Rosen on Behalf of The Rosen Law Firm, P.A. Concerning Attorneys' Fees and Expenses ("RLF Decl.").

The quality of opposing counsel is also important in evaluating the quality of Lead Counsel's work. *See, e.g., Sunbeam,* 176 F. Supp. 2d at 1334; *Ressler*, 149 F.R.D. at 654. Defendants were represented by experienced and highly-skilled lawyers from Kenny Nachwalter, P.A., Hunter Taubman Weiss LLP, and Sallah & Cox LLC, well-respected firms. Defense counsel have reputations for vigorous advocacy in the defense of complex civil cases such as this. The ability of Lead Counsel to obtain a favorable Settlement in the face of such legal opposition confirms the quality of Lead Plaintiff's Counsel's representation.

### 4.  Preclusion of Other Employment

When Lead Counsel undertook to represent Plaintiffs in this matter, it was with the expectation that a significant amount of time and effort in its prosecution, and large sums in out-of-pocket expenses, would be required. The time spent by Lead Counsel on this case was at the expense of the time that they could have devoted to other matters.

### 5.  The Customary and Contingent Nature of the Fee

The "customary fee" in a class action lawsuit of this nature is a contingency fee because virtually no individual possesses a sufficiently large stake in the litigation to justify paying his

9

attorneys on an hourly basis. *See Ressler*, 149 F.R.D. at 654; *see also Norman v. Hous. Auth. of Montgomery*, 836 F.2d 1292, 1299 (11th Cir. 1988).

The Court should give substantial weight to the contingent nature of Lead Counsel's fees when assessing the fee request. *See Behrens v. Wometco Enters., Inc.*, 118 F.R.D. 534, 548 (S.D. Fla. 1988), *aff'd*, 899 F.2d 21 (11th Cir. 1990). Courts have consistently recognized that the risk of receiving little or no recovery is a major factor in determining the award of fees, and that skilled counsel should be encouraged to undertake this risk. *See In re Checking Account Overdraft Litig.*, 830 F. Supp. 2d 1330, 1364 (S.D. Fla.2011) ("Numerous cases recognize that the contingent fee risk is an important factor in determining the fee award."); *Pinto*, 513 F. Supp. 2d at 1339 ("attorneys' risk is 'perhaps the foremost factor' in determining an appropriate fee award"); *Behrens*, 118 F.R.D. at 548 (S.D.Fla. 1988) ("A contingency fee arrangement often justifies an increase in the award of attorneys' fees").

Lead Counsel knows from experience that, despite the most vigorous and competent efforts, success in contingent litigation such as this is never guaranteed. In similar cases, plaintiffs' counsel have suffered major defeats after years of litigation, trial, and appeals in which they expended millions of dollars in time and received no compensation at all. Even a victory at the trial stage is not a guarantee of success. A good example is *Robbins v. Koger Props.*, 116 F.3d 1441 (11th Cir. 1997), in which the Eleventh Circuit reversed an $81.3 million jury verdict won by plaintiffs in a securities class action after almost seven years of litigation and rendered judgment for the defendant. The Court of Appeals ruled for the first time in this Circuit that plaintiffs could not establish loss causation by showing the price of the security was inflated by the misrepresentations. *Id.* at 1448-449. Thus, the *Robbins* case demonstrates how after years of hard-fought litigation, apparent success can be reversed or dramatically altered on appeal.

Because the fee in this matter was entirely contingent, the only certainties were that there would be no fee without a successful result and that such a result would be realized only after considerable and difficult effort. The contingent nature of Lead Counsel's representation strongly favors the requested fee.

### 6. The Results Obtained

Courts have consistently recognized that the result achieved is a major factor to be considered in making a fee award. *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983) ("most critical factor is the degree of success obtained"); *Ressler*, 149 F.R.D. at 655 ("It is well-settled that one of the primary determinants of the quality of the work performed is the result obtained.").

The Settlement Amount of $850,000 is an outstanding result. In this case, Lead Counsel retained a damages expert who concluded that Lead Plaintiff's "best case" damages recovery, *i.e.*, were Lead Plaintiff successful in opposing all of Defendants' arguments and completely prevailed on every claim, would be $2.4 million. Rosen Decl., ¶40. Defendants have disputed Plaintiffs' damages estimates and, under their analysis, assert Class-wide damages to be much less. *Id*. at ¶37. Thus, the Settlement represents 35.4% of the total recovery in the best possible outcome of this action, which is an excellent recovery. *See In re Prudential Sec., Inc. L.P. Litig.*, 1995 WL 798907 (S.D.N.Y. Nov. 20, 1995) (approving settlement of between 1.6% and 5% of claimed damages); *In re Rite Aid Corp. Sec. Litig.*, 146 F.Supp.2d 706, 715 (E.D. Pa. 2001) (noting that since 1995, class action settlements have typically recovered "between 5.5% and 6.2% of the class members' estimated losses).

Recent studies indicate that the median settlement value as a percentage of damages for cases such as this one with $2.4 million in damages is 17.1%. *See* NERA Study, at 32; Rosen Decl., Exhibit 2. The Settlement provides Class Members with approximately 35.4% of

11

Plaintiffs' estimated best possible result, assuming not only complete victory, but also Defendants' unlimited resources for payment of a judgment. The result here is more than double the historical median-an excellent result.

Additionally, the Settlement provides for payment to Class Members now, without delay, and not some wholly-speculative payment of a hypothetically-larger amount years down the road. "[M]uch of the value of a settlement lies in the ability to make funds available promptly." *In re "Agent Orange" Prod. Liab. Litig.*, 611 F. Supp. 1396, 1405 (E.D.N.Y. 1985). Moreover, the Settlement represents a recovery to Class Members of nearly all of Defendants' insurance coverage totaling $1 million[7]—which were wasting policies that would be substantially depleted or gone by the time this action was tried and survived the expected post-trial motions and appeals. Any additional recovery would be highly speculative, and would require many years of additional litigation with no promise of recovering any personal assets of the individual defendants.

### 7. The "Undesirability" of the Case

This was complex case involving defendants with modest financial resources. Chanticleer is a development stage company with only $1 million in insurance coverage and Chanticleer's auditor is small auditing firm with no insurance. *See* Rosen Decl., ¶¶19, 39. Not surprisingly, other than this action, no competing actions were filed and no competing law firms sought appointment as lead counsel. The "undesirability" of the case supports the requested

### 8. Awards in Similar Cases

Lead Counsel's fee request of one-third of $850,000 is within the range of other similar cases. *See, e.g., Waters v. Int'l Precious Metals Corp.*, 190 F.3d 1291, 1295-98 (11th Cir. 1999) (affirming award of 33 1/3% of $40 million settlement); *In re Blech Sec. Litig.*, 2002 WL

---

[7] Creason Defendants had no insurance coverage.

31720381 (S.D.N.Y. Dec. 4, 2002) (awarding 33-1/3% of $2,795,000 settlement fund); *Becher v. Long Island Lighting Co.*, 64 F. Supp. 2d 174, 182 (E.D.N.Y. 1999) (one-third fee of $7.8 million, is "well within the range accepted by courts in this circuit"); *Ray v. Lundstrom,* 2012 WL 5458425, at * 4 (D. Neb. Nov. 8, 2012) (one-third of $3 million); *In re StockerYale, Inc. Sec. Litig.*, 2007 WL 4589772, at *6 (D.N.H. Dec. 18, 2007) (33% of $3.4 million settlement fund); *Smith v. Dominion Bridge Corp.*, 2007 WL 1101272, at *10 (E.D. Pa. Apr. 11, 2007) (33-1/3% of $750,000).

Further, the requested fee is comparable to the average of fee awards in a study of securities class actions conducted by the NERA which found: "For settlements below $5 million, median fees and expenses represented 34.2% of the settlement." *See* NERA Study at 34,; Rosen Decl., Exhibit 2. The requested fee and expenses here total $305,120.33 or 35.8%-- well within range of settlements of this size. This this factor supports the requested fee.

**C. Lead Counsel's Expenses Are Reasonable and Were Necessarily Incurred to Achieve the Benefit Obtained**

Litigation expenses should be reimbursed if they are "reasonable and necessary to obtain the settlement." *Ressler*, 149 F.R.D. at 657; *see also Dowdell v. City of Apopka*, 698 F.2d 1181, 1192 (11th Cir. 1983) ("all reasonable expenses incurred in case preparation, during the course of litigation, or as an aspect of settlement of the case" may be recovered); *Behrens*, 118 F.R.D. at 549 ("plaintiff's counsel is entitled to be reimbursed from the class fund for the reasonable expenses incurred in this action"); 1 Alba Conte, Attorney Fee Awards, 2.19, at 73-74 (3d ed. 2006) ("an attorney who creates or preserves a common fund by judgment or settlement for the benefit of a class is entitled to receive reimbursement of reasonable fees and expenses involved").

13

Lead Counsel efficiently litigated this action and incurred expenses totaling $21,787 in connection with the prosecution and resolution of the Action. *See* Rosen Decl., ¶60.  These expenses include includes amounts incurred to pay fees of consulting experts, mediation fees, copying, telephone, travel costs,  computer-assisted research, court fees, travel, mailing and fax costs, and other customary expenditures. The expenses incurred were reasonable and necessary to successfully prosecute this case.  The Notice informed Settlement Class Members that Lead Counsel would seek reimbursement of expenses in an amount not to exceed $27,500.  *See* Bravata Decl., Ex. A. To date, there have been no objections to Lead Counsel's request for expenses. *Id.,* at ¶10-11.. The time deadline to object is July 24, 2014. *Id.*

### D. Important Public Policy Considerations Support The Requested Fees

Public policy considerations support the requested fee award, as courts recognize that compensating attorneys in these cases is important. The federal securities laws are remedial in nature and, in order to effectuate their purpose of protecting investors, private lawsuits are to be encouraged. *See Basic Inc. v. Levinson*, 485 U.S. 224 (1988); *Bateman Eichler, Hill Richards, Inc. v. Berner*, 472 U.S. 299 (1985); *Herman & MacLean v. Huddleston*, 459 U.S. 375 (1983). The competing public policy considerations in this case are "the encouragement of counsel to accept worthy engagements and the discouragement of excessive lawyer compensation" at the class's expense. *In re AOL Time Warner, Inc. Sec. & "ERISA" Litig.*, , 2006 U.S. Dist. LEXIS 78101, at *51 (S.D.N.Y. Sept. 28, 2006). Reasonable fee awards in such cases "encourage and support other prosecutions, and thereby forward the cause of securities law enforcement and compliance." *In re Warner Commc'ns Sec. Litig.*, 618 F. Supp. 735, 750-51 (S.D.N.Y. 1985). Here, Lead Counsel shouldered all of the risk of committing substantial resources to the litigation of this Action, and of working long hours in a heavily contested matter, notwithstanding significant uncertainty as to whether the case would ultimately succeed. Thus,

important public policy considerations will be promoted by the award of the reasonable fees requested herein.

### III. CONCLUSION

For all of the foregoing reasons, grant Plaintiffs' motion in its entirety.

Dated: July 10, 2014　　　　　　　　　　Respectfully submitted,

**THE ROSEN LAW FIRM, P.A.**

　　/s/ Laurence Rosen_____
Laurence M. Rosen
Fla. Bar No. 0182877
275 Madison Avenue, 34th Floor
New York, New York 10016
Phone: (212) 686-1060
Fax: (212) 202-3827

*Counsel for Lead Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on this on the 10th of July 2014, a true and correct copy of the foregoing document was served by CM/ECF to the parties registered to the Court's CM/ECF system.

/s/ Laurence Rosen